## Peter Eidem, Appellee, v. The Chicago, Rock Island & Pacific Railway Company, Appellant.

### Gen. No. 5374.

1. MASTER AND SERVANT—*duty of railroad company in carrying its servants.* As between an employer and an employe, when the employe receives transportation as a part of his contract of employment, the law requires no more than ordinary or reasonable care on the part of the employer.

2. NEGLIGENCE—*effect of anti-speed ordinance.* Ordinances regulating the speed of trains operate not only for the benefit of the public generally but likewise for the benefit of servants of the railroad company.

3. CONTRIBUTORY NEGLIGENCE—*what not as a matter of law.* It is not negligence *per se* to get on or off a moving train; neither is it negligence *per se* to fail to stop, look and listen at an ordinary railroad crossing if the circumstances surrounding the accident are such as will excuse the person injured from the failure to look and listen; much less would it be negligence between a train and a depot.

4. VERDICTS—*when excessive.* *Held,* that a verdict for $23,000 rendered in an action on the case for personal injuries was under the evidence excessive.

Action in case for personal injuries. Appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1910. Affirmed on *remittitur.* Opinion filed October 18, 1910. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an appeal by the Chicago, Rock Island and Pacific Railway Company from a judgment for the sum of $23,162.90 recovered by Peter Eidem, plaintiff, in the Circuit Court of Rock Island county for personal injuries averred to have been sustained by plaintiff because of the negligence of the defendant, while plaintiff was in the exercise of due care. There have been two trials in the Circuit Court. At the first trial in January, 1907, a verdict for $25,000 was returned in favor of plaintiff; he remitted $9,000 and judgment was rendered in his favor

for $16,000 which on appeal was reversed in this court for error of law. Eidem v. Chicago, R. I. & P. Ry. Co., 144 Ill. App. 320. At the second trial in October, 1909, a verdict for $23,000 was returned on which, after a motion for a new trial had been overruled, judgment was rendered, and the defendant prosecutes this appeal.

The pleadings are the same on this appeal as upon the former, except that plaintiff dismissed as to the first, third and fourth counts of the original declaration. The substance of the averment, of the second count of the declaration on which the trial was had is: that appellant operated a railroad through the cities of Rock Island and Moline and between said cities and the village of Silvis at which latter place appellant maintained a freight transfer warehouse; that appellee was at the time of the injury and for four months prior thereto in the employ of appellant at its transfer freight warehouse at Silvis as a handler of freight; that appellant in its contract of employment with appellee agreed to transport appellee to and from his said work to Moline, where he lived, and did transport him with other employes regularly; that the said railroad was a double track railroad; that appellant knowingly made it a practice not to stop its train at the respective places where appellee and his fellow employes were required to get off, but negligently slackened the speed of its train and required appellee and his fellow employes to leap therefrom, when said train was running at a speed of from two to ten miles an hour, and on the night of April 11, 1906, failed to stop its train, but required appellee to leap from the moving train in the darkness, and that appellee, in the exercise of due care, leaped from the train and unavoidably alighted upon another track of appellant between the track said train was running on and appellant's depot, and that as appellee was crossing over said track without knowledge of the approach of another train appellant negligently and

recklessly ran a locomotive engine in charge of its employes, not fellow employes of appellee, at a high and dangerous speed, to-wit, twenty-five miles an hour, striking appellee and injuring him so that he lost both legs above the knee, etc.

The first additional count averred: that when the train stopped to enable appellee to alight he necessarily and unavoidably alighted upon another track of appellant between the train on which he was riding and the depot without knowledge of the approach of a locomotive, etc. The second additional count averred an ordinance of the city of Moline providing that no railroad company shall run a passenger train within the city at a greater speed than ten miles an hour, nor any other locomotive at a greater speed than six miles an hour, and that the locomotive by which he was struck did not have a train attached and was running at an unlawful rate of speed. The third additional count resembles the second with the further averment of negligence in not complying with an ordinance requiring a bell to be rung. The remaining two counts are combinations of the preceding counts.

JACKSON, HURST & STAFFORD and M. L. BELL, for appellant.

SEARLE & MARSHALL, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The only contentions presented by appellant on this appeal are (1) that the verdict is against the weight of the evidence, (2) that there is no evidence that appellee was at the time of the accident in the exercise of due care, and (3) that the judgment is excessive. It is not claimed that there is any error of law on the last trial, except that it is insisted that a peremptory instruction to find for appellant should have been given.

It is contended on behalf of appellee that he, an

employe, receiving as a part of his compensation transportation between his residence at Moline and his place of employment at Silvis, was a passenger and entitled to the same rights and high degree of care from appellant that are due to ordinary passengers. The rule is settled that, as between an employer and employe when the employe receives transportation as a part of his contract of employment, the law requires no more than ordinary or reasonable care on the part of the employer. Walsh v. Cullen, 235 Ill. 91; Chicago Terminal Transfer Co. v. O'Donnell, 213 Ill. 545. If the appellant was exercising ordinary care for the safety of appellee at the time he was injured, then the judgment cannot be sustained.

It is contended by appellant that as between it and its employes, it had the right to operate the road engine by which appellee was injured at any speed that it saw fit, and that the statute and municipal ordinances regulating the running of trains within the limits of the city of Moline are only for the protection of third parties. This court held otherwise in Cook v. C. R. I. & P. Ry. Co., 153 Ill. App. 596, and the Supreme Court refused to grant a *certiorari* in that case at the June term, 1910. Under the rule of law adopted in that case if the evidence shows that appellant ran its engine at a rate of speed prohibited by the city ordinance of the city of Moline, then a *prima facie* case of negligence on the part of appellant was proved.

In the former opinion in this case in the review of the evidence it was said:

"The evidence shows that appellant operated a double track railroad running east and west through the city of Moline, the east bound track being next its depot. The space used for depot purposes consisted of a triangular strip of land extending from the east line of Thirteenth street to the west line of Fourteenth street in said city, a distance of 328.4 feet measured along the east bound track, which strip outside the building was paved with brick and used for station purposes. Standing thereon, with its west line

12.5 feet east of the east line of Thirteenth street, was the depot or station building 80.5 feet long and 26.77 feet wide and adjoining it on the east a baggage room, 24.2 feet long and 20.5 feet wide. Along the middle of the north side of the main part of the depot, extended a wooden platform about 40 feet long with steps at each end leading to the pavement. In January, 1906, appellee who lived at Moline entered the service of appellant and worked from 1 P. M. to midnight daily as freight truckman at Silvis, some six miles east of Moline. A number of men who lived at Moline and other stations west worked at Silvis, and appellant ran a train consisting of a switch engine and one passenger car from some point west of Moline to Silvis and back, to carry these laborers to and from their homes. At one o'clock A. M. on April 11, 1906, appellee with fifteen or twenty other workmen left Silvis on this work train which proceeded to Moline on appellant's west bound track. When it was between Fifteenth and Fourteenth streets, appellee went to the front platform, and between Fourteenth and Thirteenth street stepped or jumped from the lower step and was struck by a road engine running east on the east bound track.

"Appellee testified that he went out on the platform when the train was between Fourteenth and Fifteenth streets and stayed there until they were opposite the depot, when he got off. Just as he stepped on the track he saw the light of the approaching road engine about ten or fifteen feet away but did not hear the bell ring at any time. The head light was not bright but reddish or yellow and the place where he stepped off was directly in front of the steps which go into the depot. On cross examination, he stated that he was the first one out of the car and that he stood on the step and did not look. He did not know whether a train was coming or not. He thought if he had stuck his head out he could have seen. When he got off he did not look to see if anything was coming. The work train was moving when he got off and he did not think of such a thing as a train coming in there and did not pay any special attention to anything but getting off. He had plenty of time to look if he had thought a

train was coming. He never knew the train to stop when he got off. They always got off before it stopped. Henry Maudee, who also worked at Silvis for appellant, and who was on the work train at the time of the accident standing directly behind appellee on the platform when he alighted from the car, testified that the custom was not to stop this work train when the men got off. At the time of the accident it was going at about two miles per hour. He did not hear a whistle sound or a bell ring on the road engine. Maudee said that appellee at the time he was struck was right opposite the steps on the east side of the depot. In his judgment the road engine was going at from ten to fifteen miles per hour and had a red or yellow head light, which in his judgment was an oil light. When appellee was struck he was opposite the main door of the depot and when he was picked up he was four or five feet east of the baggage room. John Peacock testified that he went to the scene of the accident, where his attention was called to one of appellee's feet wedged in the rail about five or ten feet east of the baggage room. Swan Larson, a patrolman at Moline, testified that he went to the scene of the accident and saw appellee's foot squeezed in between the rail and plank ten or fifteen feet east of the east end of the depot. Robert Carlson, employed by appellant at Silvis and on the work-train at the time of the accident, testified that sometimes the train would stop when it reached the station at Moline and sometimes it would not. He thought the train had stopped when appellee stepped off. The engine that struck him was going at the rate of from ten to fifteen miles per hour. He did not think the whistle was blowing. The engine had a light which he knew was not an electric light. Dale Bird, employed at Silvis by appellant and on the work-train at the time of the accident, testified that sometimes the train would stop at the Moline depot and sometimes it would not. The engine that hit appellee was going at the rate of from fifteen to twenty miles per hour and the work-train stopped as it passed. Appellee was about opposite the northeast corner of the baggage room after he was struck. Witness did not hear the bell on either

engine and did not know whether the whistle on either engine was blown. Richard Thomas, fireman on the road engine, testified that their engine was going about four miles per hour and that its bell was ringing when it passed through Moline. When it stopped the tender was opposite where appellee's legs were cut off, just ninety-two feet from the west edge of Fourteenth street. The work train was going about as fast as their engine when appellee got off. On cross-examination he testified that the engine had an electric light and that he first saw the car of the work train when the road engine was just east of Thirteenth street. The switch engine was crossing Fifteenth street when he first saw it. The whistle of the road engine was not blown then because there was no reason for it. He thought they had plenty of time to meet the switch engine before it reached the depot. They passed about 100 feet east of the depot and the road engine stopped in about sixty-eight feet. When it stopped it was ninety-two feet from the west line of Fourteenth street. Appellee was struck 117 feet east of the east end of the baggage room. Henry Geisenhagen, engineer on the road engine, testified that the engine had an electric headlight and that it was lighted that night. It also had an automatic bell ringer and the bell was ringing when they passed through Moline. He first saw the switch engine when it was near Fifteenth street. His engine was going four or five miles per hour and the switch engine about as fast. He stopped his engine about seventy or eighty feet from Fourteenth street after appellee was struck. The road engine did not come between the work-train and the depot, and the train was not at the depot at the same time as the road engine. The work-train stopped close to Thirteenth street. James Hughes, fireman on the switch engine, testified that the road engine had an electric headlight and was going about five miles per hour. He did not remember any nights that they had not stopped at Moline depot. He heard the bell on the road engine ring and said that appellee was about eighty feet from the depot when he was struck. The switch engine stopped so that the pilot was even with the baggage room and as the

cabs of the engines passed they were about thirty feet east of the baggage room. Fred Shaw, engineer on the switch engine, testified that the engines passed about sixty feet east of the baggage room. The work train was going about four miles per hour. The bell on the road engine was ringing. He helped to take appellee's foot from the track where it was wedged in, ninety-two feet from Fourteenth street. There was no night when they did not stop at Thirteenth street, and they always came to a full stop at the depot. August Sandberg, employed by appellant at Silvis and on the work train at the time of the accident, testified that the train always stopped at Moline. He judged it was going four or five miles per hour at the time of the accident. Frank Strong, switchman in charge of the train crew on the work-train, testified that the road engine had an electric head light, and that he saw appellee's legs wedged in next the rail about eighty-five feet from the east end of the baggage room. He did not hear the whistle or bell on the road engine. Oscar E. Samuels, employed by appellant at Silvis, and on the work-train at the time of the accident, testified that it was the custom to come to a full stop at Moline. The road engine had a bright light and the work-train was going about three or four miles per hour. It always came to a full stop at the depot at Moline whether the men got off or not. He judged the road engine was going not over four miles per hour, and he did not hear the bell or the whistle. Henry Glick, switchman of the train crew of the work-train at the time of the accident, testified that the work-train stopped east of the depot. The road engine had an electric headlight and was not going more than four or five miles per hour. The work-train passed the road engine east of the depot seventy-five or eighty feet, and always came to a full stop at Moline. The men were in the habit of getting off before the train stopped every night and he had warned them not to do this. Appellee testified in rebuttal that he never was warned and never heard any such warning given.''

All the witnesses who testified at the former trial testified to substantially the same facts on the last

trial, except Dale Baird and Henry Geisenhagen who did not testify at the last trial, and appellee had only one new witness—Paul A. Biggs. He testified that he was night ticket agent for appellant, and was on duty at the Moline depot at the time of the accident; that he saw the road engine at Thirteenth street approaching from the west and at the same time saw the engine and car from the east just pulling into the station; that the engine from the east was opposite the center of the depot when the engine was approaching from the west; that the engine attached to the car pulled ten or twelve feet west of the office; that he learned a man had been struck and saw the body lying about fifteen or twenty feet from the west end of the coach even with the east end of the baggage room; that a leg was nearly even with the end of the baggage room and that there was nothing to prevent the view of a person getting off the train from seeing the engine.

The evidence of Biggs tends to establish the fact that the work train was in front of the depot before the road engine passed between the train and the depot. The evidence is in sharp conflict as to whether the road engine was running slowly or rapidly, under or above the rate of speed prescribed by the ordinance, and whether the bell of the road engine was ringing or not as it approached and passed the work train. Five witnesses testify the road engine was not running faster than from two to six miles an hour when it passed the depot, while the appellee and one other witness testified it was running from fifteen to twenty miles an hour, and the greater number of witnesses give as a reason for the engine running very slowly the fact that there was a red light in the street at Thirteenth street and because of the curve in the track appeared to be a railroad danger signal to the road engine approaching from the west. The distance the road engine went after striking appellee also tends to prove that it was going very slow at the time. A

preponderance of the evidence seems to show that the engine was not exceeding the speed permitted by the ordinance.

There is a direct conflict in the evidence also as to where the accident occurred. Appellee and Maudee located the place as in front of the depot. Biggs puts it opposite the east end of the baggage room, and two other witnesses say one of appellee's feet was wedged in the rail ten or fifteen feet east of the baggage room. Thomas, the fireman on the road engine, testified that he saw appellee leap from the train in front of the engine and he notified the engineer to stop the engine and when it stopped appellee was right behind the tender and that his limbs were there and that the hind end of the tender was 92 feet west of Fourteenth street and 117 feet east of the baggage room door. Hughes, Strong, Shaw and Glick testified to the same locality as Thomas. If it be the fact that appellee got off the train when it was in motion and when the front end of the car was midway between Fourteenth street and the depot, then it was not negligence for the road engine to pass the running train at that place, and appellee is not entitled to recover. A box car had been used at one time to carry the men back and forth, but for some time before the accident a passenger coach had been used. Appellee testified that the train was running when he got off and that the train only slowed down but never came to a stop after the coach was used to carry the men back and forth, yet the evidence fails to establish the averment that appellant compelled appellee to alight from the train before it stopped. The great preponderance of the evidence is that the train always stopped at the depot for the men to get off and that many of the men were in the habit of getting off the work-train before it came to a full stop. It is a question of fact upon which the evidence is conflicting whether appellee got off the car in front of the depot or before it reached the depot, although it was on depot ground that he

alighted according to the contention of appellant. The proof showed that he lived west of the depot, from which an inference arises that he would not be apt to alight before he reached the depot. It is a question of fact upon which reasonable men may differ whether it was negligence in the appellant to run an engine between a depot and a work-train from which men were alighting from a slowly moving train, and we cannot say as a matter of law that such act was not negligence on the part of appellant.

It is insisted the proof shows that appellee was not in the exercise of due care, which was necessary to sustain the verdict. Appellee testifies that he stood on the lower step. "I looked just in the direction I was going. I stood there and looked southwest from that point." "I was going to go that way." Q. "Now you didn't look east to see if anything was coming?" Answer: "No, I don't think I did." Q. "And you didn't look west to see if anything was coming?" Answer: "The way I stood there I could see partly west from the place where I was." Q. "Now do you mean to say that you looked down the track to the west?" Answer: "No sir, I didn't stretch out and look, I didn't do that, but I could see anyways, the way I was standing." Q. "Can you see down that track from the car as far down as Thirteenth street?" Answer: "Yes sir, I saw that far that night. I could see that far from where I stood that night, I was looking that way." He testified also that he was looking on the ground to see if it was safe and then took two steps without looking, then he saw the headlight and the engine was upon him.

It is not negligence *per se* to get on or off a moving train (C. & A. Ry. Co. v. Byrum, 153 Ill. 131; C. & E. I. Ry. Co. v. Storment, 190 Ill. 42), neither is it negligence *per se* to fail to stop, look and listen at an ordinary railroad crossing if the circumstances surrounding the accident are such as will excuse the person injured from a failure to look and listen; much

less would it be negligence between a train and a depot. Henry v. C. C. C. & St. L. R. R. Co., 236 Ill. 219.

On a consideration of all the evidence in the record we conclude that a jury might find either that appellee was or was not in the exercise of due care. Reasonable men might find either way, and with evidence in that situation we would not be justified in disturbing the conclusion of the jury.

It is also urged that the judgment is excessive. The appellee is an unskilled laborer earning $1.65 per day. He has lost both legs but has since the injury used artificial limbs at times and at others short wooden stumps and crutches. After the first judgment he remitted down to $16,000. He is entitled to compensation. The interest at five per cent on the amount of the judgment would produce an annuity of two and one-half times his earnings and give him the $23,000 besides. The judgment should be reduced to $17,000. He would then have an annuity much in excess of his earnings before he was injured, have the principal sum also and he still has some earning capacity. If he will remit to $17,000 the judgment will be affirmed at the costs of appellee; otherwise it will be reversed and remanded because of the excessive damages.

*Affirmed on remittitur.*

Appellee having filed a *remittitur* herein of that part of the judgment in excess of $17,000 the judgment is therefore affirmed in the sum of $17,000 at the cost of appellee.