Argued May 7, decided July 1, rehearing denied September 9, 1913.

## CRANE v. OREGON R. & N. CO.*

(133 Pac. 810.)

**Principal and Agent—Power of Attorney—Revocation.**

1. A power of attorney is revoked by the death of the principal.

**Appeal and Error—Affirmance—Moot Case.**

2. In ejectment by tenants in common, who perfected an appeal, the sale by part of the tenants of their share of the premises to the defendant's successor in interest will not necessitate an affirmance on the theory that the case has become a moot one, because, under

---

*As to effect of provision in power of attorney declaring that it shall not be revoked by death, see note in 6 L. R. A. (N. S.) 855.

                                                        REPORTER.

Section 336, L. O. L., a tenant in common may maintain ejectment against his cotenant in possession, and it will be presumed that defendant's successor in interest claimed the premises in severalty as did the defendant.

### Tenancy in Common—Rights of Tenant in Common.

3. Under Section 336, L. O. L., providing that a tenant in common of real property may sue his cotenant, where his right to possession is denied expressly or by implication, a tenant in common may maintain ejectment against his cotenant in possession where the cotenant claims the entire tract in severalty.

### Appeal and Error—Dismissal—Effect.

4. Under Section 549, L. O. L., providing that any party to a judgment or decree may appeal therefrom, the dismissal of defendant's appeal will not necessitate a dismissal of plaintiff's cross-appeal.

### Appeal and Error—Bill of Exceptions—Time of Filing.

5. When plaintiff's bill of exceptions was settled and allowed in October, the trial judge certified that it was agreed that the original bill, instead of a transcript, might be sent up. The bill reached the Supreme Court in May, but, being sent without an order of court, no file mark was placed thereon. *Held*, that as permission to file would have been granted if leave had been asked, or a rule would have been issued on the clerk of the trial court directing him to send up the bill, the bill of exceptions may subsequently be filed as on the date it was received.

### Ejectment—Damages—Evidence.

6. In ejectment, where mesne profits were claimed under Section 325, L. O. L., evidence that the property could have been profitably used if a warehouse had been built thereon is properly excluded, it appearing that there was no warehouse thereon, for the damages recoverable must be determined according to the use for which the property is adapted, and, in the absence of a warehouse, it is not adaptable to that use.

### Trial—View by Jury—Effect of View.

7. In ejectment, where mesne profits were claimed, and the jury were allowed to view the premises in accordance with Section 133, L. O. L., they cannot compute the damages in accordance with information acquired in viewing them, for that information can only be used to properly understand and correctly apply the evidence adduced for their consideration.

### Ejectment—Actions for Mesne Profits—Subjects of Recovery.

8. Under Section 325, L. O. L., providing for an action at law for recovery of possession with damages for withholding the same, plaintiff in ejectment may not only recover mesne profits, but additional damages for injury to his freehold.

### Municipal Corporations — Public Improvements — Orders Opening Streets—Collateral Attack.

9. Where printed notice was given of a proposed change in a street, purporting to be such information as the charter of the city required,

and an appeal was given by the charter for the correction of material errors, the proceedings are not open to collateral attack.

**Evidence—Presumptions.**

10. Under the presumption enunciated by Section 799, subdivision 34, L. O. L., that the law has been obeyed, it will not be presumed that the defendant in ejectment stored its property upon that portion of the land condemned for a street, and thus maintained a nuisance.

**Ejectment—Mesne Profits—Judgment—Evidence—Sufficiency.**

11. Even though the jury may in some instances determine the value of the premises withheld, without evidence of purely pecuniary injury, no judgment for mesne profits is warranted, when no testimony was offered as to the length of time the premises were used by the defendant, and as to the portion of the premises so used.

**Eminent Domain—"Just Compensation."**

12. The just compensation required by Article I, Section 18, of the Constitution, before private property may be taken for public purposes, is such an award as may be agreed upon by a court of competent jurisdiction or a jury of appraisers appointed by law for that purpose.

**Eminent Domain—Compensation—Payment of Compensation.**

13. The awarding of a corporate warrant for property taken for a public use is a sufficient compliance with Article I, Section 18, of the Constitution, requiring the payment of just compensation before property can be taken for public use.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Susan Crane, Alonzo Crane, Alfred W. Crane and Christopher Crane against the Oregon Railroad & Navigation Company, to recover the possession of real property and damages for withholding the same. The facts are that George Crane died in the year 1901, and left surviving Susan Crane, his widow, and Alonzo, Alfred W., and Christopher Crane, his sons, the plaintiffs herein. Prior to his death George Crane had been the owner in fee of all of lots 2, 3, 4, and 5, in block 12, in Riverside Addition to the city of La Grande, Oregon, except a small triangular piece taken from the southwest corner of lot 5 by the right of way of the railroad of the defendant, the Oregon Railroad & Navigation Company.

Harding Street joins these lots on the north, Second Street on the west, the defendant's right of way on the southwest, an alley on the south, and lot 1 in that block on the east. The real property in question was assessed for the year 1895 "to George Crane and to all other owners known and unknown." The taxes levied on the premises not having been paid, the land was sold for the delinquency to Union County, which municipality thereafter assigned the certificate of sale to the defendant, to whom the sheriff of that county on December 3, 1900, executed a tax deed. The common council of the city of La Grande, attempting to exercise the power conferred by the municipal charter, adopted a resolution November 19, 1900, proposing to change Second Street so as to include all of lot 5 and the west 18 feet of lot 4 of the block mentioned. Such prescribed proceedings were had that ultimately appraisers were appointed who determined the amount of damages the supposed owners affected thereby would sustain by reason of the contemplated change, city warrants were drawn in payment thereof, and on April 26, 1901, an ordinance was enacted approving all the measures taken to condemn the land and in effect declaring Second Street as changed a public highway. Harrison Avenue, a proposed street, undertaken to be extended southwesterly, immediately east and parallel with the defendant's right of way, was laid upon the greater part of lot 5, about half of lot 4, and a small part of lot 3. The attempt to establish such avenue was annulled, however, by a judgment of the Circuit Court for that county. Second Street was also extended southwesterly across the railroad, and thereafter the defendant made quite a fill of cinders, gravel, etc., over and upon the lots in question, placing thereon sidetracks, and storing upon the property ties and other material to be used in construction and repair work. The complaint herein

alleges that the defendant is a corporation engaged in operating a railway from Portland to Huntington, in Oregon, which line passes through La Grande; that the plaintiffs, as tenants in common, are the owners in fee of the lots referred to; that on January 2, 1901, the defendant unlawfully took possession of the premises, hauled thereon sand and cinders, covering the land to a depth of about six feet, to plaintiffs' damage in the sum of $1,000, and also built over and upon the property a line of railway which it illegally operated to plaintiffs' damage in the sum of $500 per annum for six years immediately preceding the commencement of this action. Judgment was demanded for the recovery of the possession of the lots, for $1,000 damages thereto, and for $5,000 as the reasonable rental value thereon.

The answer denied the material averments of the complaint, alleged that in the year 1895 George Crane was the owner of the lots in controversy, and set forth the proceedings undertaken to assess the premises, to levy a tax thereon, and to sell the land as hereinbefore stated.

For another defense it is averred that ever since December 3, 1900, the defendant under color of title and claim of ownership had been in the open, notorious, continuous and hostile possession of all of lots 2 and 3 and the east 40 feet of lot 4 in the block mentioned, asserting a right thereto adverse to the plaintiffs and to all other persons. For a further answer the proceedings undertaken by the common council to change Second Street are set forth in detail, and it is averred that no appeal has been taken from the judgment of condemnation therein whereby the proposed relocation of that street had become final. For an additional answer and a partial defense, it is alleged that no part of Harrison Avenue is owned by either of the plaintiffs.

66 Or.—21

A reply having put in issue the averments of new matter in the answer, the cause was tried resulting in a judgment, awarding plaintiffs the possession of lots 2 and 3 and the east 40 feet of lot 4 in block 12, giving them damages in the sum of $1, but determining that they were not entitled to the possession of lot 5 or the west 18 feet of lot 4 in that block, which latter tract of land had been appropriated as a public highway. From this judgment both parties appealed. The defendant, however, failed to file in this court an abstract or brief, and for that reason its appeal was dismissed.        AFFIRMED: REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. Turner Oliver.*

For respondent there was a brief over the names of *Mr. Thomas H. Crawford, Mr. Arthur C. Spencer* and *Mr. Charles E. Cochran,* with an oral argument by *Mr. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. A motion to dismiss the plaintiffs' appeal has been interposed on the ground that since the judgment was rendered the controversy involved in the action has been settled by the parties. It appears from affidavits and other writings submitted with the motion and supplemental thereto that the plaintiffs Alonzo Crane and his brother, Alfred, on November 27, 1908, executed to their mother, the plaintiff Susan Crane, a power of attorney, authorizing her to sell any of their real property in Oregon and to execute to the purchaser the necessary deeds therefor. This power of attorney was duly recorded December 6, 1908, in Union County, Oregon, and does not appear to have been re-

voked.   The plaintiff Alfred W. Crane died after the judgment herein was rendered, and left surviving a minor son Alfred and a widow, who reside in the State of. Washington.   The death of this plaintiff necessarily annulled the agency created by the power of attorney as far as it related to him.

2. After the judgment was rendered, the plaintiff Susan Crane on September 24, 1912, for herself and as attorney in fact for Alonzo Crane, entered into a written agreement with the Oregon-Washington Railroad & Navigation Company, a corporation, which has succeeded to the property, rights and franchises of the defendant, whereby, in consideration of $300 then paid, she stipulated to release to such successor her right of dower and also to convey to it an undivided one-third, being Alonzo Crane's interest, in and to the south 25 feet of lots 2 and 3 and to the east 40 feet of lot 4, together with all of lot 5 and the west 18 feet of lot 4 in block 12, agreeing, also, that the purchaser should remain in possession of the real property to be conveyed.   The further sum of $700 was to be paid upon the execution of good and sufficient deeds to such successors by the other tenants in common of their respective interests, or that sum would be paid into the court for them if the title to the premises was required to be secured by condemnation.   Pursuant to this writing, an action to appropriate the real property was instituted in the Circuit Court of the State of Oregon for Union County against the other tenants in common who had not joined in the contract to obtain their title to the premises last hereinbefore described.   This agreement did not pretend to divest Christopher Crane or Alfred Crane, Jr., of his undivided one-third interest in the land described in the written agreement.   No judgment in the condemnation action has become final so as to bar the defendants therein of their respective estates, thereby terminating

their interests in the premises, as in the case of *Moores* v. *Moores,* 36 Or. 261 (59 Pac. 327). How can it be said, then, that the defendant's successor in interest, by securing a contract stipulating for an assignment of Mrs. Crane's dower right and covenanting for a conveyance of Alonzo Crane's undivided one-third estate in fee in the premises described in the agreement, concluded the controversy as to the remaining cotenants? It may be assumed that, after obtaining this agreement, the railroad company acquiesced in the court's determination as thus modified and abandoned its attempt to review the judgment herein, for which reason its appeal was dismissed. As to Christopher Crane and his nephew, Alfred, though the defendant's successor in interest has in effect become a tenant in common with them as to a part of the premises, it is practically insisting upon an ouster against them as to all the land described in the agreement consummated with Mrs. Crane.

3. An action in ejectment by a tenant in common against a cotenant is maintainable where it appears that the plaintiff is entitled to the demanded premises, and that his right thereto is denied by the defendant, or that the latter has done some act equivalent to such denial: Section 336, L. O. L.; *Grant* v. *Paddock,* 30 Or. 312 (47 Pac. 712). "The question as to whether a given state of facts as between cotenants," says a text-writer, "constitutes an ouster, arises * * where the defendant claims that his possession has been so inconsistent with plaintiff's rights as to grow into a perfect title in severalty by virtue of the statute of limitations": Freeman, Coten. & Par. (2 ed.), § 291. It will be remembered that the answer alleges that by such means the defendant secured a right to all the lots in question in severalty. It is not to be supposed that because such party has been succeeded by another corporation that the latter is not safely guard-

ing the rights, property and franchises intrusted to it, and, this being so, it is necessarily asserting the same claims its predecessor put forth.    This motion is without merit.

4. Another motion to dismiss the plaintiffs' appeal is based upon the ground that the dismissal of the defendant's appeal necessarily affirmed the judgment, and also terminated the plaintiffs' right to prosecute their cross-appeal.    A statute prescribing who may review the ultimate determination of a trial court contains in part the following declaration: "Any party to a judgment or decree other than a judgment or decree given by confession, or for want of an answer, may appeal therefrom": Section 549, L. O. L.    From this enactment it will be seen that there may be as many separate appeals from a judgment or decree rendered or given upon contested issues of fact as there are different active parties to the suit or action. Each separate appeal from a judgment in a law action is necessarily distinct, and must be complete within itself.

5. In the case at bar plaintiffs' counsel in due time served and filed a notice of appeal and undertaking therefor and within the period limited filed with our clerk certified copies of such notice, of the undertaking, and of the judgment rendered, thereby conferring upon this court jurisdiction of the cause.    The plaintiffs' bill of exceptions was settled and allowed October 26, 1912, the trial judge certifying that it was agreed by the attorneys for the respective parties that the original bill of exceptions, instead of a transcript thereof, might be sent up to this court.    Such bill reached our clerk May 25, 1913; but, as it was sent without an order of court, no filing mark was placed thereon.    If proper application had been made a rule would have been issued on the clerk of the trial court directing him to send up the bill, or if leave had been

asked to file it when received permission would have been granted. Since orders of that kind might have been made in the first instance, the bill of exceptions will be filed as of the date it was received.

The defendant's counsel call attention to cases holding that the dismissal of a main appeal affirms a judgment, and also concludes cross-appeals. The cases of *Crawford's Admr.* v. *Bashford,* 16 B. Mon. (Ky.) 3, and *Hammond* v. *Conyers,* 118 Ga. 539 (45 S. E. 417), illustrate this principle. In those cases, however, the conclusions reached were predicated upon a construction of statutes differing from ours with respect to appeals. If the dismissal of a first appeal terminated a cross-appeal, it would necessarily follow that the party first appealing, after perfecting his appeal, could by refusing to do some act required to secure a transfer of the case or by failing to comply with a rule of this court respecting the mode of procedure, prevent his adversary, who had taken a cross-appeal, from obtaining a review of a judgment. The statement of such possible consequences shows the absurdity of the doctrine contended for. Though a first appeal may be dismissed, a cross-appeal will be retained, and the judgment reviewed with respect to the errors assigned by the appellant, who takes a subsequent appeal, and properly brings his case up for consideration. The motions to dismiss the plaintiffs' appeal are therefore denied.

Considering the case on its merits, the bill of exceptions shows that, when the cause was submitted, the court, over exceptions, refused to give any of the instructions requested by plaintiffs' counsel, and directed the jury to find in accordance with the judgment hereinbefore referred to, thereby holding in effect that the assessment of the lots to "all other persons known and unknown" was void, defeating the tax sale. (*Lewis* v. *Blackburn,* 42 Or. 114 [69 Pac.

1024]), and that the defendant's assertion of an adverse title had not been substantiated.

6. C. T. Darley, a civil engineer, testified that he had measured the fill made by the defendant upon the demanded lots in order to place its railroad tracks thereon, finding that 3,000 cubic yards of earth had been left upon the plaintiffs' property, and that it would cost 35 cents per cubic yard to remove such material, so as to prepare the ground for a building. This was then directed as follows: "State whether or not a sidetrack could be built upon the main line of the Oregon Railroad & Navigation Company along the property in question, so that trains could start with the same power as in daily use along the main track." The purpose of this inquiry was to show that the lots were adapted to the possible or probable uses of a warehouse and came within the provisions of the statute, permitting the owner of contiguous real property to build a warehouse thereon, and to compel a railroad company to lay down a track from its line to the premises with the necessary connections and switches, as required by law: Section 6902, L. O. L. An objection to the inquiry was sustained, an exception allowed, and it is insisted that an error was thereby committed.

The real purpose of the question evidently was to show that the lots bordered or were near the defendant's right of way, and that the real property could be profitably used if a warehouse were built thereon. It is believed that the exception referred to may be properly considered in connection with the following alleged error: Though the demanded lots are uninclosed, vacant and unimproved, excepting the fill referred to, the plaintiffs' counsel undertook to establish by several witnesses that the real property was adapted to warehouse purposes, and as such the defendant, by withholding the possession of the land, was

liable for the annual value of the use of the premises for a storehouse for six years immediately preceding the commencement of this action. Objections to such offers of proof having been sustained, exceptions were allowed, and it is insisted that errors were thereby committed. Our statute enlarging the common-law remedy permits a plaintiff in an action in ejectment to recover damages for withholding the possession of real property: Section 325, L. O. L. In referring to such modified redress, an author observes: ''This remedy is termed an action for mesne profits, or an action of trespass for mesne profits'': Tyler, Eject. 838. In actions to recover such profits, it is often said by text-writers and by judges of courts of last resort that the owner of land who has been ousted from its possession is entitled to the annual avails of the property for the use to which it is adapted. The word ''adapted,'' as thus employed, evidently means the use to which the owner of the premises had appropriated them before the ouster, or the use to which the land could probably have been put in its then condition. Thus in *McMahan* v. *Bowe,* 114 Mass. 140 (19 Am. Rep. 321), it was determined that the damages which a demandant in a writ of entry might recover were not to be computed upon the value of the claimed land for a specific purpose for which he might have used the premises had he not been disseized. In *Horton* v. *Cooley,* 135 Mass. 589, which was an action to recover the value of the use of real property, it appeared that the defendant had used for storage a building equipped with water-power and fitted with a machine-shop, and it was ruled that he was liable for the use of the building as a machine-shop, and not merely as a storeroom. So, too, in *Morris* v. *Tinker,* 60 Ga. 466, which was an action in ejectment, the defendant having occupied a mill site upon which a steam sawmill had been erected, the rent of the mill and site was held to be

the measure of damages recoverable.   In that case Mr. Justice BLECKLEY says: "Whatever would be rent as between landlord and tenant is mesne profits as between the parties in ejectment. * * With reference to rent or mesne profits, the whole is to be taken as realty, and a suit for the profits of the land applies to the land in its actual condition." To the same effect is the case of *Rafferty* v. *Davis,* 54 Or. 77 (102 Pac. 305). In the case at bar there was no warehouse on the land. Hence the value of the use of the real property for warehouse purposes ·was immaterial, and no errors were committed in refusing to receive testimony on this subject.

7. Pursuant to the authority granted by statute (Section 133, L. O. L.), the jury prior to the giving of any evidence were by order of the court conducted in a body in the custody of a proper officer to the *locus in quo* in order to view the premises. The jury must have seen where the fill was made by the defendant and the land upon which it built its railroad, and though there is a conflict of judicial utterance upon this subject, the rule appearing to have been adopted in this state and in our opinion supported by the better reasoning is that the information thus acquired, independent of any evidence, is of no value in determining the issues involved: *State* v. *Ah Lee,* 8 Or. 237. Illustrating the principle thus seemingly upheld, it was determined that, where by direction of the court a view of real property was had by the jury, they could not take into consideration the result of their examination in determining the character of the premises, but were required to render their verdict on the testimony of witnesses given before them at the trial, and to use their inspection of the land as a means to enable them properly to understand and correctly to apply the evidence adduced for their consideration:

*Wright* v. *Carpenter,* 49 Cal. 608; *Close* v. *Samm,* 27 Iowa, 503.

8. As to the question of damages for making the fill upon the lots and building and operating thereon a railroad. track, a statute like ours, prescribing that a recovery of mesne profits may be joined with an action for the possession of real property (Section 325, L. O. L.), authorizes a plaintiff in ejectment, where an injury to his estate in the demanded premises has been caused by a defendant, to augment his damages beyond the measure of rent to such an extent as will reimburse him: Sedgwick, Dam. (9 ed.), § 910; Tyler, Eject., p. 848.

9. It will be remembered that the witness Darley testified that the defendant placed on the plaintiffs' lots 3,000 cubic yards of earth, to remove which, in order to erect a building on the premises, would cost 35 cents per cubic yard. As a part of the realty involved is lot 5 and the west 18 feet of lot 4, upon which lots Second Street was attempted to be located, if the fill were made upon such street as altered and the railroad built and operated thereon, the plaintiffs are remediless in this collateral action, unless the proceedings undertaken by the common council of La Grande to re-establish the highway were void. Objections were made and exceptions taken by plaintiffs' counsel to the introduction in evidence of copies of such proceedings, and an instruction requested by plaintiffs' counsel upon the subject was refused. Looking at copies of the proceedings referred to, it is manifest that a printed notice was given of the proposed change in the street purporting to be such information as the charter of La Grande required, thereby calling into existence the power of the common council, and authorizing that inferior tribunal to proceed in the matter. It also appears that a right of appeal was given from the determination of the coun-

cil for the correction of material errors, thus rendering the proceedings invulnerable against collateral attack: Elliott, Roads & Streets (2 ed.), § 320; Lewis, Eminent Domain (3 ed.), § 865; *Bewley* v. *Graves,* 17 Or. 274 (20 Pac. 322); *Sweek* v. *Jorgensen,* 33 Or. 270 (54 Pac. 156).

10, 11. Whether or not any part of the fill made by the defendant was placed upon lots 2 and 3 and the east 40 feet of lot 4 or that the railroad track was built and operated on such premises, the possession of which the plaintiffs were found to be entitled to, it is impossible to determine from an inspection of the record before us, and, such being the case, we are unable to say that error was committed in not directing a greater sum to be awarded as damages. J. B. Eddy testified that from June 1, 1901, to January 1, 1912, he had been employed by the defendant as its tax and right of way agent, and that the property in question had been used in connection with the railroad yard for the purpose of storing ties and timber. This constitutes the entire testimony to be found in the bill of exceptions relating to the use of the property, except the offer to prove a use for warehouse purposes. No attempt was made to ascertain the length of time these lots were used by the defendant nor what the reasonable value of such use was for storage purposes. Invoking the presumption that the law has been obeyed (Section 799, subdivision 34, L. O. L.), the defendant did not commit a nuisance by storing railroad material upon that part of the lots included within Second Street as altered, and hence the ties and timber must have been piled upon lots 2, 3, and the east 40 feet of lot 4. It was incumbent upon the plaintiffs to produce the best proof possible in support of the averments of their complaint; and, where as in the case at bar the amount of damages is capable of being established, proof thereof must be offered, and, if no

evidence be given upon that subject, the recovery is necessarily limited to a nominal sum only: Sedgwick, Dam. (9 ed.), § 171. This author at Section 171a of the edition noted states that in some instances value may be found by a jury without evidence in cases of purely pecuniary injury. Assuming without deciding that the legal principle last referred to is applicable herein, the jury could not determine the value of the use of the lots not occupied by Second Street, when no testimony was offered as to the length of time for which the premises were used by the defendant; and, such being the case, no error was committed in directing a verdict for nominal damages on this branch of the case.

12, 13. It is maintained that since only $25 was awarded to the plaintiffs by the common council as damages for the condemnation of Second Street and as a city warrant was issued for the sum which when discounted would equal the amount of the award, but which order for the payment of money was never delivered or tendered, the amount thus determined upon was not just compensation within the meaning of Article I, Section 18, of our Constitution; that the sum so ascertained should have been paid in money and placed upon deposit, instead of being manifested by a city warrant, and that permitting such warrant to be offered in evidence, errors were committed.

Just compensation means such an award as may be agreed upon by a court of competent jurisdiction, a jury or appraisers appointed by law for that purpose. The sum determined upon herein having been fixed by appraisers legally appointed, the award constituted just compensation. While there is some conflict of authority as to the method of paying the award, when land has been condemned by a municipality, it has been held in this state that a corporate warrant is suffi-

cient for that purpose: *Baker County* v. *Benson,* 40 Or. 207 (66 Pac. 815).

Other alleged errors are assigned; but, believing that a fair trial has been had, it follows that the judgment should be affirmed, and it is so ordered.

AFFIRMED: REHEARING DENIED.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

I am unable to concur in the opinion of Mr. Justice MOORE in this case on the point that the Circuit Court was right in directing the jury to find only the nominal damage of one dollar in favor of the plaintiffs on account of defendant's having withheld the realty in question.

The reasonable value of the use of the premises is predicated upon two elements, viz., the nature and situation of the property as one, and the length of time it was occupied as the other. Abundant testimony appears in the record that the lots are situated in the flourishing city of La Grande adjacent to an interstate railway in the immediate neighborhood of its freight and passenger depots. These circumstances of themselves suggest rental value to any ordinary juror. He does not need, and it is not indispensable that he should have, someone sworn to testify that in the opinion of the witness the use of the premises is worth any definite sum of money. But, if such an estimate in dollars and cents were necessary, it was supplied by the testimony of Mr. Bushnell. When asked, ''Now what in your opinion are these lots reasonably worth per year as a rental for any purpose for which they are adapted?'' he said, ''I should think about five hundred dollars; something like that.'' Other testimony might be mentioned, but enough has been indicated to take the question to the jury on that point.

There is no issue about the defendant having been in possession of the property for some years next prior to the commencement of the action. The plaintiffs allege that defendant has been in possession ever since January 2, 1901, while the defendant itself says that it has been occupying. the premises in dispute ever since December 3, 1900. Its own witness, J. B. Eddy, its tax and right of way agent from June 1, 1901, to January 1, 1912, testified that the defendant used the property in question in connection with its yard in La Grande for the purpose of storing ties and timber.

Length of time of occupancy for more than the statutory six years of withholding for which damages may be recovered is an admitted fact, not requiring testimony to prove it. Its situation in a trade center adjacent to a great railway and its depots is a circumstance appealing strongly to practical jurors on the question of rental value, and this indirect evidence is reinforced by the opinion of the witness Bushnell that its use is reasonably worth $500 a year. The defendant's own witness completes the case for plaintiffs when he tells that the defendant used the property for the purpose of storing ties and timber thereon.

Without descanting upon the weight of the testimony, it was clearly sufficient as a matter of law to require the trial court to submit to the jury the question of damages for withholding the property.