Argued March 2; Affirmed as Modified March 23, 1948

# DICKERSON ET AL. *v.* MURFIELD

191 P. (2d) 380

*Robert R. Rankin,* of Portland, argued the cause and filed a brief for appellants.

*Nicholas Jaureguy,* of Portland, argued the cause for respondents. On the brief were Cake, Jaureguy & Tooze, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY and BRAND, Justices.

BRAND, J.

This is a second appeal. In 1942 the plaintiffs, H. M. Dickerson and Rue Fern McFarland, who are the children of Melissa Dickerson and her second husband, Robert F. Dickerson, brought this suit against the defendants, Ilo D. Murfield, as executor of the estate of Melissa Dickerson, Ilo D. Murfield, personally, and Ernest C. Murfield, the defendants being the children of Melissa Dickerson and her first husband, Eli Murfield.

In the ensuing paragraph we will summarize the

allegations of the original complaint which were in substance as follows:

Robert F. Dickerson died intestate on the 17th day of April, 1925, the sole heirs being his widow, Melissa, and the plaintiffs. The estate was administered, the plaintiff, H. M. Dickerson being the executor. In January, 1926, an agreement was made between the plaintiffs and their mother, Melissa Dickerson, by the terms of which the plaintiffs were to transfer to Melissa Dickerson "all of their interests as heirs of the said Robert F. Dickerson", in consideration for which Melissa Dickerson "agreed to hold all of said property, together with all of her other property, and upon her death to divide the same equally between her four children", plaintiffs and defendants herein. The plaintiffs performed their part of the agreement and the agreement was also approved by the defendants. Pursuant to the agreement, in June, 1926, Melissa Dickerson executed a will in conformity with the provisions of the agreement. Thereafter Melissa Dickerson violated the agreement during her lifetime by executing a second will inconsistent with the terms of the agreement and conveying her residence property in Portland to the defendants. Thereafter, Melissa Dickerson died. The second will was admitted to probate and her son, the defendant, Ilo D. Murfield, was appointed executor of her estate. The prayer of the original complaint was that her second will be declared void and that her first will be declared to be her last will, that the deed to the defendants be declared void, and for such other relief as may be equitable.

In addition to certain admissions and denials, the defendants affirmatively alleged that the plaintiffs had taken possession of certain personal property

bequeathed to them by the second will of Melissa Dickerson, and that by reason thereof they had waived their rights to object to the probate of the second will. This defense was held insufficient on the first appeal and need not be further considered.

As a second affirmative defense to the original complaint the defendants alleged that Robert F. Dickerson had been the owner of certain described real property in Oklahoma and had expressed the desire that after his death, said property should be equally divided among the plaintiffs and defendants. It is further alleged that after the death of Robert F. Dickerson, the Oklahoma property was deeded to the plaintiff, H. M. Dickerson, who, in consideration thereof, executed certain trust deeds acknowledging that he held the property in trust for the use of his mother, Melissa Dickerson during her lifetime, and upon her death to be conveyed one-fourth to each of the children of Melissa, that is, to the two plaintiffs and two defendants, share and share alike. The answer alleged that the plaintiff, H. M. Dickerson had repudiated the trust. The trial court struck the affirmative answer of the defendants concerning the Oklahoma land, but at the trial, evidence in support of the alleged trust in the Oklahoma land was offered and received for the purpose of showing that the plaintiffs should be barred from any recovery because they had failed to do equity or to come into equity with clean hands.

After trial of the issues, the circuit court found that an agreement had been made between Melissa Dickerson and the plaintiffs, substantially as alleged in the complaint, whereby Melissa agreed to hold all of her property for the four children, share and share alike, and to divide it equally upon her death. It found that the alleged agreement had been performed by the

plaintiffs, and that Melissa Dickerson, pursuant to her agreement, made a will dividing all of her property four ways. The court also found, as alleged by the plaintiffs, that thereafter, Melissa violated her agreement by making a new and inconsistent will and by conveying her residence property to the defendants. The trial court further found that the agreement between Melissa and the plaintiffs to hold, and upon death to distribute the property four ways, was made for the purpose of complying with an earlier agreement between Melissa and her husband, Robert F. Dickerson, which latter agreement provided that upon the death of Robert F. Dickerson, all property left by him should go to Melissa for life, and upon her death, all said property, together with all property owned by Melissa Dickerson at the time of her death should be divided equally four ways. The court also found, however, that pursuant to the agreement between Melissa and Robert F. Dickerson, the Oklahoma property was transferred to the plaintiff, H. M. Dickerson, who executed a declaration of trust wherein he agreed to pay the income from the Oklahoma property to his mother, Melissa, during her lifetime, and thereafter to divide the property four ways. The court further found that thereafter, the plaintiff, H. M. Dickerson, encouraged by the plaintiff, Rue Fern McFarland, repudiated the trust in the Oklahoma land, and it therefore concluded as a matter of law that the plaintiffs having refused to do equity were not entitled to any relief. Pursuant to these findings, the trial court entered a decree dismissing plaintiffs' complaint and upholding the second will. The decree, however, made no disposition of the Oklahoma property, apparently because of the fact that there was no pleading to support a decree concerning that property.

This court, on appeal, held that the foregoing findings of the trial court were supported by a preponderance of the evidence, except for the finding that Rue Fern McFarland was involved in the inequitable conduct of her brother, H. M. Dickerson. Thus, upon the appeal, this court held in substance that all of the property in controversy, including the Oklahoma land, was subject to a trust of which the four children of Melissa Dickerson were equal beneficiaries. However, we held that the inequitable conduct of H. M. Dickerson in repudiating the trust as to the Oklahoma land should not bar the plaintiff, Rue Fern McFarland from the enforcement of any rights that she might enjoy, and should not bar H. M. Dickerson from any of his rights under the trust if he should purge himself from his inconscionable conduct by reframing the pleadings in such a way that the court might act upon the Oklahoma property as well as upon the other property. We said:

> "From the record before us now, which, of course, is the same as that which was considered by the learned trial court, it appears that the contract or agreement, alleged in plaintiffs' complaint as existing between the parties hereto and their mother was but an amplification or modification of the earlier arrangement and agreement between Robert F. Dickerson and his wife Melissa Dickerson, assented to, ratified and confirmed by the parties hereto."

We observed that there was no pleading on which the distribution of the Oklahoma property could be based, and we pointed out that there was a defect of parties in that Bruce R. McFarland, a devisee of Melissa Dickerson under the second will had not been made a party to the suit, and we said: "This * * * requires an order that said Bruce R. McFarland be

made such a party to the end that he may have his day in court.'' *Dickerson v. Murfield*, 173 Or. 662, 147 P. (2d) 194.

The cause was sent back to the circuit court for further trial with leave to amend the pleadings, introduce new evidence, if any, and to add Bruce R. McFarland as a party.

In December, 1944, the plaintiffs filed in the same cause an amended and supplemental complaint, and on 10 June, 1946, they filed a final and supplemental complaint in which Laurette M. Dickerson, wife of H. M. Dickerson, Roy L. McFarland, husband of Rue Fern McFarland, Bruce R. McFarland and La Rayne R. McFarland, his wife, were joined as parties plaintiff. In this instrument the plaintiffs allege that:

''* * * newly discovered evidence having been found which plaintiffs allege materially changes the record in this case, and an opportunity now being given to all parties to purge themselves of any alleged inequitable and inconsistent conduct and allow the Court to more fully pass upon all the rights of the various parties hereto, these plaintiffs by this Final and Supplemental Complaint, allege:''

In this instrument the plaintiffs make no offer to do equity by dividing the Oklahoma property four ways but on the contrary they pray for an injunction restraining the defendants from maintaining a suit which had been instituted for the purpose of securing a four-way division of the Oklahoma land. In their final and supplemental complaint, upon which the second trial was had, the plaintiffs allege that Robert F. Dickerson, prior to 17 April, 1925, expressed the ''desire and intention'' that upon his death all of his property of which he might die possessed should go to his wife, Melissa, and upon her death be equally distributed

among her four children, and that Melissa, in consideration of the said Robert F. Dickerson so disposing of his property, agreed that "all property which she possessed during the remainder of her life, including any property in her name, which she received from the said Robert F. Dickerson" should be divided equally among her four children. It is alleged that the terms of the agreement between Robert F. Dickerson and his wife were known to, and ratified by her four children, that Robert F. Dickerson died intestate, but that his heirs, H. M. Dickerson and Rue Fern McFarland "in furtherance of said agreement" conveyed to their mother, Melissa Dickerson, certain real and personal property which they had inherited from their father, Robert F. Dickerson. It is further alleged that Melissa Dickerson executed an instrument as follows:

"I, Melissa Dickerson, of Portland, Oregon, this 13th day of February 1926, have received from my daughter, Rue Fern McFarland, her interest in the real and personal property of the Estate of Robert F. Dickerson, as shown by the probate records of Multnomah County, Oregon, and from my son, H. Merle Dickerson, his interest in the real and personal property of the Estate of Robert F. Dickerson, as shown by the probate records of Multnomah County, Oregon, together with $190.15 allowed him as Administrator fees in said probate, and his promise to give to me each year during my lifetime, the net income after taxes and expenses, from his farm, the NE ¼ of Sec. 32, T 3 N, R 16 W. I. M. in Kiowa County, Oklahoma, in consideration for which, I hereby agree to execute my Last Will & Testament and provide therein to divide all my property of whatever nature and wherever situated, equally between my four children, to-wit: Ernest Coy Murfield, Ilo D. Murfield, H. Merle Dickerson, and Rue Fern McFarland, all of Portland, Oregon.

"Melissa Dickerson"

Plaintiffs then allege the making of the first will in conformity with her agreement and the subsequent breach of her agreement by the execution of a second will and by the conveyance of certain real property to the defendants. The position of the defendants as stated in their answer, is that the agreement for the four-way distribution applies and should be enforced as to all of the property comprising the assets of the estate of Melissa Dickerson and also as to the Oklahoma property and the real property which had been conveyed to the defendants by Melissa Dickerson, subject to certain exceptions to be later mentioned.

The answer alleges that Robert F. Dickerson had expressed the desire that after his death all of his property should be divided equally between the four children of Melissa, subject to her life interest therein, and it alleges that the conveyances of the Oklahoma property through Carl L. Stanley to H. M. Dickerson were made pursuant to the desire and request of Robert F. Dickerson and his wife, and that the plaintiff, H. M. Dickerson, pursuant to the request and direction of his father, executed an agreement whereby he acknowledged that the Oklahoma property was held by him in trust to pay the income to Melissa for life, and thereafter to divide the property equally among the four children.

At the second trial, the defendants introduced in evidence Paragraphs II, III and IV of the plaintiffs' amended and supplemental complaint as admissions against interest. Paragraph IV thereof contains the statement that "in furtherance of the agreement described in Paragraph II above [between Robert F. Dickerson and his wife] and in order to avoid the costs and expenses of probate" Robert F. Dickerson and Melissa, his wife, conveyed the Oklahoma property to

158

one Carl L. Stanley "by deed dated September 24, 1924, and so signed, sealed, witnessed and acknowledged and delivered, with $3.00 in Internal Revenue stamps attached thereto and cancelled, as to be entitled to record," and that thereafter, Carl L. Stanley and wife conveyed the Oklahoma property to H. M. Dickerson "which transfer was made in furtherance of the agreement described in Paragraphs II and III hereinabove * * *"," then follows the description of the Oklahoma land.

The plaintiffs seek to explain these damaging admissions by saying they were inserted on advice of counsel because they were in conformity "with the law of the case" as laid down by this court on the first appeal. This explanation cannot be accepted. The alleged fact that the deed to Carl L. Stanley was executed to avoid probate was never even suggested by this court in its opinion on the first appeal. Again we shall show that H. M. Dickerson, who swore to the allegation that the deed to the Oklahoma property was delivered to Stanley, testified at the second trial that said deed was never so delivered.

■ The doctrine concerning the law of the case has little if any bearing on this situation. On the basis of the evidence then before us we held that the findings of the trial court were supported by a preponderance of the evidence. Upon that evidence our pronouncement was final. But the parties were authorized to amend and produce further evidence. If that was done, then our conclusion was no longer final and our decision on the first appeal as to the Oklahoma land did not constitute the law of the case. A plaintiff may properly plead that an appellate court on previous appeal has made findings which constitute the law of the case, but no plaintiff can properly plead and verify

allegations and then free himself from the effect of his statements by claiming that the statements were untrue but that an appellate decision had made them the law of the case. In our view, the decision on the first appeal does not, of itself, determine the issues on the present record. We are, however, satisfied as to the correctness of the findings and conclusions of this court upon the first appeal as the record then stood. We will not again review the evidence which was considered at that time, and unless the present record contains new evidence sufficient to change our previously expressed opinion, we will adhere to it.

The only new evidence which it is claimed was unavailable at the time of the first trial is plaintiffs' exhibit 1. This is the agreement signed by Melissa Dickerson on the 13th day of February, 1926, which was set forth in the final and supplemental complaint and which we have quoted verbatim, supra. The instrument which Melissa signed was drawn up by H. M. Dickerson. At that time he held a deed to the Oklahoma property signed by Stanley, and on the face of the record he apparently held legal title. That instrument recites that H. M. Dickerson has promised to give the net income from "his" farm in Oklahoma to his mother during her lifetime. The fact that H. M. Dickerson prepared and induced his mother to sign a paper which was apparently in her favor, and which provided that she receive the income from "his" farm, is insufficient, in view of other evidence, to show that he was equitable as well as legal owner.

Both defendants directly testified that there was a general agreement between Robert F. Dickerson and Melissa that their combined estates should be divided equally and they both testified that the family agreement included the Oklahoma property. The plain-

tiff, H. M. Dickerson, testified that he discussed the matter with his mother. We quote:

"* * * I told her that Rue and I were willing to turn over all the property from Dad's estate, if she would promise to divide whatever she had left equally between the four of us."

Again H. M. Dickerson testified as follows:

"A. Yes, there was an agreement, if it might be called an agreement or understanding throughout our life.

"Q. What was that understanding throughout your life?

"A. That mother and dad would divide their property equally among the four of us."

On cross examination, counsel for the defendants read to the plaintiff, H. M. Dickerson, the following portion from the amended and supplemental complaint of the plaintiffs:

"And his wife, Melissa Dickerson, in consideration of the above proposed disposition of property, agreed, upon the death of Robert F. Dickerson, that all property owned and left by him should be held and used by her, Melissa Dickerson, for the term of her natural life; that upon the death of said Melissa Dickerson, all of said property, together with all other property owned, possessed, or over which she had any power or disposition at her death, would by the said Melissa Dickerson be divided equally among the children of the said Melissa Dickerson last herein above described."

Counsel for the defendants then asked the witness, "Was that the agreement made between your father and mother?", to which the witness answered, "Yes, that was the understanding—it was never a written contract agreement but it was the understanding that was the way they both wanted their property to be divided, yes."

G. G. Smith, an old friend of the family and their

attorney who handled the transaction testified as follows:

> "Well, that was a general agreement made with the understanding of all the heirs. That agreement was made by Robert Dickerson, deceased, that all of his property should be divided into four equal shares upon the death of the mother, that the mother was to have the use and income of the property so long as she lived, and upon her death it was to be divided in four equal shares. H. M. Dickerson, Rue Fern Dickerson, and the two Murfield boys were each to share equally."

He also testified that the conveyances from the heirs of Robert F. Dickerson to their mother were made in consideration of the general agreement and that he prepared a number of copies of a trust agreement to the effect that H. M. Dickerson was holding the Oklahoma property in trust for the four children, that the income was to go to Mrs. Dickerson during her lifetime, and that the trust agreement was signed by H. M. Dickerson. The testimony of H. M. Dickerson concerning the Oklahoma transaction is unconvincing. On 12 July, 1924, Robert F. Dickerson and Melissa executed a power of attorney to H. M. Dickerson, authorizing him to sell the Oklahoma property. H. M. Dickerson testified that in September, 1924, he discussed the Oklahoma property alone with his father in the basement of the home and was told that his father wanted him to have the property and that he should go to G. G. Smith and have the deed executed. At this time, Robert F. Dickerson, his wife, Melissa, H. M. Dickerson and G. G. Smith were all in Portland. Plaintiff, H. M. Dickerson went to the office of G. G. Smith. Concerning that meeting, he testified as follows:

> "Mr. JAUREGUY: Tell us the conversation you had with G. G. Smith.

"A. I told him I wanted him to draw a deed to the Oklahoma properties and dad wanted to have them transferred to me.

"Q. What did he say?

"A. He said 'I don't think it would be advisable for you to sign a deed under power of attorney to yourself.' I said 'well, that is up to you, any details of it,' and he said 'I would advise to make them to a third party and have them transferred from a third party to you,' and I said 'O. K., you draw the deed to that effect,' and he did.

"Q. Who picked out the third party.

"A. He wanted to know who to use and I said 'Well, Carl Stanley would be as good as anybody.'

"Q. And did you draw the deed on the same day you were there?

"A. Yes sir.

"Q. About how long were you in the office?

"A. Well I don't know how long, I may have been there a couple of hours.

"Q. Discussing this matter with him all this time?

"A. He was drawing the deed or dictating the deed to his secretary part of the time.

"Q. You signed it there?

"A. Yes, I signed it there.

"Q. What happened to the deed, did he keep it or give it to you?

"A. He gave it to me.

"Q. What did you do with it?

"A. I kept it.

"Q. So you never did deliver it to Carl Stanley?

"A. No, the deed was never delivered to Carl Stanley.

"Q. When did you tell Carl Stanley you were doing that?

"A. I don't recall whether Carl Stanley was ever told about it, until he was asked to transfer the property to me, or not."

The deed which was executed by H. M. Dickerson to Stanley was dated 24 September, 1924. Robert F.

Dickerson died on 17 April, 1925. The deed which had been held by H. M. Dickerson undelivered since its execution was filed for record on 3 June, 1925, together with power of attorney. The deed from Stanley to H. M. Dickerson was dated 25 May, 1925 and recorded on 22 June, 1925.

The willingness of H. M. Dickerson, acting as attorney in fact for his father and mother, to execute a deed to himself when his parents were available and competent to execute it themselves, his failure to record the power or the deed until after his father's death, and his failure to deliver the deed to Stanley, all cast doubt upon the validity of his claim.

■ If a grantor executes a deed but retains it in his possession and control until his death, the instrument is void for want of delivery. 16 Am. Jur., Deeds, § 142, p. 516. Furthermore, in the absence of special circumstances, a power of attorney is revoked by the death of the principal. *Crane v. Oregon R. & N. Co.*, 66 Or. 317, 133 P. 810; *Gellert v. Bank of California Nat. Assn.*, 107 Or. 162, 214 P. 377; *First National Bank of Portland v. Connolly*, 172 Or. 434, at 467, 138 P. (2d) 613, 143 P. (2d) 243. In fact, although the Stanley deed was ultimately recorded, it appears from the testimony of H. M. Dickerson that it never was actually delivered. It would certainly be a strange construction to hold that H. M. Dickerson executed the deed as attorney for his parents and then accepted delivery as agent for Stanley. If there was no delivery of the deed to Stanley during the life of Robert F. Dickerson, then Stanley never acquired the title and his deed to H. M. Dickerson conveyed no interest in the land. In that event, the Oklahoma property, upon the death of Robert F. Dickerson descended to his heirs along with the other property and it is covered by the agreement

between Robert F. Dickerson and his wife which was agreed to by all the heirs. If, on the other hand, any title passed to H. M. Dickerson, then he is met by the agreement that the Oklahoma property was to be transferred to him in trust, he to pay the net income to Melissa for her life, and then to divide the property equally among her children. The preponderance of the evidence supports the defendants' contention that a declaration of trust was prepared and was in fact signed by H. M. Dickerson.

Upon the second trial of the main issue relative to the Oklahoma land, the court found for the defendants in harmony with the findings of the first trial court and with the opinion of this court. The second review of the evidence convinces us of the correctness of those findings. The decree of the trial court concerning the Oklahoma land is therefore affirmed.

In the answer of the defendants, it is alleged that:

"Upon the death of defendants' father, defendants inherited certain real property which was later sold for the sum of $2000 which said sum of $2000 defendants turned over to their said mother, Melissa Dickerson, to be held for them, and which $2000 was used in the purchase of property forming a portion of her estate at the time of her death."

This allegation was denied by the reply. In accordance with the prayer of the answer, the trial court decreed that after the payment of claims and expenses of administration in the estate of Melissa Dickerson, the defendants were each to receive $1000 in repayment of like sums intrusted to Melissa Dickerson by defendants during her lifetime. The decree provided that said sums be paid first to the defendants, the remaining assets of the estate and the Oklahoma land to be distributed in equal shares to the four children of

Melissa Dickerson. The testimony of Ilo D. Murfield in support of this claim is as follows:

"MR. JAUREGUY: And you also mentioned in your answer about $2000.00 which you inherited from your father.

"A. $2000.00 from my own father's estate.

"THE COURT: Mr. Murfield?

"A. Yes, the farm in Kansas was sold and this brought $2000.00 and the $2000.00 was turned over by my brother and myself to our mother for her use during her lifetime.

"Q. And she used it to the benefit of the whole family?

"A. Yes, to the benefit of the whole family.

"MR. JAUREGUY: You may take the witness.

"THE COURT: Was that money you received through your own father's property in Kansas distributed before your mother married Mr. Dickerson?

"A. No, afterward."

On cross examination, the defendant Murfield testified as follows:

"Q. When did she receive that?

"A. Oh, that was — — that had been — — at least 30 years ago.

"Q. That had nothing to do with this estate had it, either your mother's or stepfather's estate?

"A. No, that belonged to my brother and myself.

"THE COURT: It must have been longer than thirty years ago.

"A. It could have been longer than that.

"THE COURT: Was your father dead when your mother married Mr. Dickerson?

"A. Yes, sir.

"MR. JAUREGUY: They were married in 1887.

"THE COURT: The Dickersons?

"MR. JAUREGUY: Yes.

"THE WITNESS: But this money that came from my father's estate came to mother long after

she was married to Dickerson. We were all living in Portland at the time.

"MR. RANKIN: That had nothing to do with Robert Dickerson's estate or Melissa Dickerson's?

"A. It was to come to my brother and I because it was turned over to mother and used by all the parties.

"Q. Merle Dickerson didn't use any of it?

"A. He was a young man at the time.

"Q. You mean because his mother got it, he got the benefit of it?

"A. Yes.

"Q. And that is the same thing with Fern?

"A. Yes, sir.

"MR. JAUREGUY: I thought you were going to ask him about insurance.

"MR. RANKIN: I thought that money came from insurance.

"THE WITNESS: It came from the sale of land."

The claim of the defendants to $1000 each on account of money intrusted by them to their mother appears for the first time in the answer to the plaintiffs' amended and supplemental complaint.

The defendants apparently recognize that they could not now enforce the claim as an ordinary debt against the estate of Melissa Dickerson. They again invoke the rule that one who seeks equity must do equity and that since the plaintiffs seek an equal four-way distribution of the estate, the defendants should first receive credit against the estate of $1000 each because they had turned over to their mother $2000 many years ago. The defendants explain their belated assertion of this claim by saying that they were not desirous of asserting it against the mother's estate "unless and until the deed and will that gave them the major share of that estate were set aside", but it must be noted that in the original complaint the plain-

tiffs prayed for the cancellation of the second will and of the deed to the defendants, yet the defendants never asserted their $2000 claim until after the decision of this court on the first appeal. We also observe that the defendants themselves at the first trial sought to retain the benefits under the deed which Melissa Dickerson executed in their favor, although they now concede that the property so conveyed to them should be divided four ways. The essential difficulty is that the testimony of the defendants themselves is so brief and uncertain that we are not convinced that Melissa ever actually became a debtor or a trustee of the money paid to her by the Murfield boys. The statements are in substance, that the money was "turned over" for her use during her lifetime and that she used it for the benefit of the whole family and that it was used by all of the parties. While the testimony of Dr. Stanley indicates that Melissa had expressed the wish that the $2000 should go to the defendants, it does not show by satisfactory evidence that she owed them that amount. In view of the relationship of the parties it is fair to presume that the money turned over by the sons to their mother was a gift. But in any event, the policy of the law as manifested by the statutory provision requiring the disallowance of claims barred by the statute of limitations, the requirement of satisfactory evidence other than the testimony of the claimant when a claim has been rejected by an executor and the general reluctance of equity to enforce stale claims, lead us to the conclusion that the defendants are not entitled to receive $1000 each from the estate prior to its distribution as directed in the decree.

Assignment of error No. 3 is without merit. The plaintiffs each received $1000 from an insurance policy of $3000 on the life of their father, Robert F.

Dickerson. The evidence shows that they turned this money over to their mother but that she later repaid them. It was to equalize these payments that Melissa Dickerson changed the beneficiaries in the policy upon her life so that upon her death the two defendants each received $1000. The sum total result of the insurance transactions is that each of the four children of Melissa Dickerson has received $1000. This is in conformity with the general agreement of the parties. The last assignment of error is to the effect that the court erred in failing to set aside the second will of Melissa Dickerson and in failing to enjoin the defendants from continuing with the probate thereof. This contention is without merit. *Van Vlack v. Van Vlack,* 182 P. (2d) 969, 44 Or. Adv. Sh. 933.

In conclusion we hold that the defendants are not entitled to a prior claim against the assets of the estate on account of the $2000 turned over by them to their mother. The decree of the trial court properly directs that the property devised by Melissa Dickerson to Bruce R. McFarland, the property deeded to the defendants by Melissa Dickerson, the Oklahoma property and all the real and personal property and assets of the estate of Melissa Dickerson, after payment of claims and expenses of administration, shall be divided share and share alike between the four children of Melissa Dickerson. The parties should be required to execute all appropriate deeds for the accomplishment of the equal distribution and for the establishment of good record title in each of the said children as to their respective shares.

Except as modified herein, the decree of the trial court is affirmed. The cause is remanded for further proceedings in harmony with this opinion. Neither plaintiffs nor defendants will recover costs.