## GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. JOHN SULLIVAN.

### Decided January 23, 1909.

**1.—Railway—Negligence—Speed of Train.**

Where it was the duty of a brakeman to get on a moving train at a certain time and place and this was known to the engineer and conductor in charge of the train, it was their duty to run it at a rate of speed which would enable such brakeman to get on with reasonable safety; and what that rate of speed was, and whether the train was run at it, were questions for the jury.

**2.—Contributory Negligence—Boarding Moving Train.**

Where a brakeman was injured in attempting to board a train, and it appeared that it was his duty to get on at the time and place, and the duty of the engineer and conductor to slow the train to a rate of speed to enable him to get on with reasonable safety, he could assume that this had been done, and in the absence of knowledge that it had not, the issue of contributory negligence in attempting to get on when the speed was greater, was for the jury.

**3.—Negligence—Speed of Train.**

Where the railway company was charged with negligence in running its train at an excessive rate of speed causing an injury to an employe while he was attempting to board it in discharge of his duty, and it was alleged that it was the duty of the engineer and conductor in charge of the train to so reduce the speed as would enable the employe to get on with reasonable safety to himself, testimony that it was usual to run trains at about six or eight miles an hour under such circumstances, that the train on this occasion was

run at a greater rate of speed and that it was excessive speed that caused the injury, authorized a finding of negligence, there being no exceptions to the petition on the ground of failure to allege the rate of speed to which the train should have been reduced, or what was usual or customary under the circumstances.

### 4.—Charge—Abstruse Words—Definition—Practice.

A charge will not be held erroneous because of the use therein of abstruse words or phrases without explaining their meaning, in the absence of a request for a special charge supplying the omission.

### 5.—Same—Weight of Evidence—Comment on Facts.

It is error for the trial judge in his charge to comment on the weight of the evidence, or emphasize any particular fact or group of facts, or otherwise indicate to the jury an opinion as to weight or importance of any given fact or circumstance in evidence; but, to invoke the rule, the party complaining must point out the particular in which it has been violated.

### 6.—Same—Repetition—Special Charges.

It is not error to refuse charges requested when the matters are sufficiently embraced in and covered by the general charge.

Appeal from the District Court of Harris County.   Tried below before Hon. W. P. Hamblen.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelly & Wolters,* for appellant.

*Lovejoy & Parker,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—The plaintiff, John Sullivan, brought this suit in the District Court of Harris County, Texas, against the defendant, Galveston, Harrisburg & San Antonio Railway Company, for damages on account of personal injuries alleged to have been received by him August 18, 1906, while he was engaged as a freight brakeman in the defendant's service at the station or siding of Manchester, in Fort Bend County, Texas.   Plaintiff alleged: "That on, to wit, the 18th day of August, A. D. 1906, plaintiff was in the employ of defendant as brakeman on freight trains; that on said date, in the performance of his duty, he was serving as swing brakeman on a freight train operated by defendant from Glidden, in Colorado County, to Houston, in Harris County; that the said train falling behind in the time it is required to make, plaintiff was, by the conductor and engineer in charge of said train, sent forward from Rosenberg, in Fort Bend County, to Manchester siding in said county, for the purpose of flagging or detaining at that point a westbound freight train operated by defendant on its said railway until plaintiff's said train could pass the same at said point, it being plaintiff's duty when his said train arrived at that point to take his position on the same, and it being the duty of the engineer and conductor in charge of said train to so reduce the speed thereof as would enable plaintiff to get upon the same with reasonable safety to himself; that plaintiff went ahead and detained or flagged the said train at Manchester, and upon his said train approaching the said point he undertook, as was his duty, to get upon the same, but owing to the high rate of speed at

which the same was running he was not able to do so, and in his effort to get upon the same he was thrown down and his right arm fell across the rails and was run over by the wheels of the car in the train, and crushed and mangled so that the same had to be, and was, thereafter, on the same day, amputated at a point below the elbow, and he was wounded, bruised and cut in the head and right shoulder and wounded and bruised in his right side. That plaintiff was thrown down, or caused to fall and be injured, as aforesaid, by reason of the carelessness and negligence of defendant and its said servants and employes in charge of the train, as aforesaid, in this: That the said servants and employes, knowing that it was plaintiff's duty to get upon said train, and knowing that he would attempt so to do, failed to reduce the speed to a point where it would have been reasonably safe for plaintiff to undertake to get upon the said train, but on the contrary ran the same at such a great rate of speed that it was not reasonably safe for plaintiff to undertake to get upon the train, which fact they knew, or in the exercise of ordinary care would have known under the circumstances; and plaintiff says that he supposed when he attempted to get upon said train that the same was running at a rate of speed which would enable him to do so with reasonable safety, and that he did not realize the contrary until he got hold of a handhold upon one of the cars in the train, when it was too late for him to save himself from being thrown down and injured, as aforesaid."

The defendant answered by general denial, and pleaded contributory negligence, assumed risk and unavoidable accident. Trial was had before a jury and resulted in a verdict and judgment for plaintiff for $500, from which judgment defendant prosecutes this appeal.

Appellant's first assignment of error is based upon the action of the court in overruling appellant's motion to instruct a verdict for it, and complains by its second assignment of the refusal of the trial court to give its special charge No. 1, peremptorily instructing the jury to return a verdict in favor of the defendant.

Plaintiff offered no evidence in support of the allegations of his petition except his own, and the defendant did not call any of the train crew as witnesses in its behalf, but rested its defense upon the plaintiff's testimony and a written statement of plaintiff, made about ten days after the injury, prepared by one of its claim agents, which will hereafter be referred to.

Plaintiff testified, in substance, that he was in the employment of defendant in the capacity of freight brakeman, and on the occasion of his injury was engaged on a freight train running eastwardly in the direction of Houston. At Rosenberg he was directed by the conductor, Bodkins, to go to Manchester, a siding some three or four miles eastward, and flag against train No. 241, a freight train headed westward, and hold it until the eastbound reached there. That for that purpose he got on the Macaroni passenger train and told the engineer to put him off wherever he should see No. 241; that the engineer put him off at Manchester siding, where he found train No. 241, which he held for his own train; that he had been at Manchester siding from twenty or thirty minutes when he discovered his train approaching; that it was two or three hundred yards away; that upon

seeing his train he turned and walked toward a little bridge with his back to the train; that there was grass in between the two tracks, and he walked down to a little foot-bridge in order to get a good foothold; that when he got close to the bridge he turned around and held up the flag he was carrying to be taken by Bodkins, at the same time giving the engineer, who was looking in his direction, a slow signal; that Bodkins was standing in the gangway, and plaintiff held his eyes on him to see whether he would take the flag out of his hand, which he did; that he then turned sideways, looking down upon the ground, and put himself in motion with the train, and caught hold with his left hand of the handhold on the fourth, fifth or sixth car from the engine; that when the train was approaching he was looking directly at it, and could not judge of the speed; that a man looking at a train approaching can not accurately judge of the speed; that when he raised the flag to be taken by Bodkins he had his eyes on Bodkins and did not notice the speed, and that after Bodkins took the flag from his hand he was then occupied with getting on the train; that the train was not to be stopped in order to let him on, but he was to get on while the same was in motion, and that it was the duty of the engineer and conductor to slow the speed down to a point where he could get on with reasonable safety, say to about six or eight miles an hour; that he did not realize the speed of the train until he got hold of the handhold, and that it was then too late for him to save himself; that judging by the way he was thrown down the speed of the train must have been something over twelve miles an hour; that the rate of speed usual to be maintained under such circumstances was six or eight miles an hour; that the train was running at a greater rate of speed than six or eight miles an hour; that when he took hold of the handhold, for the purpose of getting on, he considered the train was going six or eight miles an hour; that his position being swing brakeman, his proper place on the train was near the front end, and the place he undertook to get on was the proper one, under the circumstances; that had he waited for the caboose to come along he would have had no assurance that the speed would not be greater; that it was not expected of him to wait for the caboose, and that the noise made by the engine No. 241, standing near him on the siding, interfered with his hearing the noise made by his train and in that way getting any idea of the speed.

There is no substantial conflict between plaintiff's evidence and the statement made to the claim agent, except that it appears in the statement that plaintiff said that "the engine was shut off and the train was rolling along," and "the speed of the train did not cause me to fall, for I had gotten on the train many times before when it was going that fast or faster," and that he attributed his falling to the "slope on the east side of the bridge," whereas, in giving his evidence he stated that he did not remember that he told the claim agent that the engine was "shut off" when it passed him, nor did he remember telling the agent that it was not the speed of the train but the unevenness of the ground that caused him to fall; that it was in fact the speed of the train that caused him to fall, and that at the time he made the statement he was sick, weak and dizzy, and suffering pain, and did not

know what he did tell the claim agent; that he did not know whether the statement that the speed of the train did not throw him was true or not, but he did not remember saying anything like that to the claim agent. Both the claim agent and notary before whom plaintiff made affidavit to the statement testified that plaintiff, at the time he signed the statement, appeared to be perfectly rational and to understand the statement when it was read to him, and the claim agent further testified that in writing the statement he wrote down nothing except what the plaintiff said in answer to his questions, and as nearly in the language of the plaintiff as he could.

Plaintiff further testified that after he handed the flag to conductor Bodkins there was nothing in the position occupied by him to prevent him seeing the locomotive and cars passing him and their rate of speed; that he supposed they had reduced the speed of the train to six or eight miles per hour, and that he did not pay any attention to the rate, but if he had tried he supposed he could have estimated the rate while the engine and the first four or five cars were passing him, but relying upon the belief that they were going by at the rate of six or eight miles an hour, paid no attention to the actual speed.

It being the duty of plaintiff at said time and place to get on the train while it was in motion, and this being known to both the engineer and conductor in charge of the train, it was their duty to run it at a rate of speed which would enable plaintiff to get on with reasonable safety, and what that rate of speed was, and whether the train was run at it, were peculiarly questions for the jury. So also was the question whether he was guilty of contributory negligence in attempting to get on the train one for the jury under all the circumstances. Plaintiff stated that when the train first came in view it was two hundred or three hundred yards away. He stated that between the two tracks there was grass growing, and that when he first saw the train he turned and walked with his back to the train to a little bridge, for the purpose of having a better footing; that upon reaching the bridge he turned and looked in the direction of the train, and at that time raised the flag, which was in his hand, to be taken by the conductor, who was standing in the gangway of the engine, at the same time giving the engineer a slow signal; that from that time until the conductor took the flag he had his eyes upon him, and after he took the flag he then looked at the ground and at once threw himself in motion with the train for the purpose of catching on to same, and that he did catch on to about the fourth, fifth or sixth car from the engine, but the rate of speed was so great he could not get hold with his right hand, and was thrown down and had his arm run over and mashed off.

Plaintiff had a right to suppose that those in charge of the train would reduce the speed to a point where he could get on with reasonable safety, as that was their duty, and he stated that he supposed they had done that when he undertook to get on, and he did not find out the contrary until it was too late to save himself. Certainly, in view of what the plaintiff had a right to suppose, and the lack of opportunity to judge the rate of speed, it can not be said that he was guilty of contributory negligence, or that he assumed the risk of injury, as a matter of law. From the time that the train first came in

view but a short time elapsed until he undertook to get on, and during the greater part of that time plaintiff was occupied with those acts which were necessary for him to perform in order that he might get on the train. Not only so, but he distinctly stated that a person looking at an approaching train could not judge accurately as to the rate of speed it was running. He further stated that he belonged on the head end, and that it was proper for him to undertake to get on the car at the place he did. It is a significant fact that the defendant did not call any of the train crew to contradict plaintiff in any of the statements he made. (Texas & Pac. Ry. Co. v. Murphy, 46 Texas, 360; Kansas & G. S. L. Ry. Co. v. Dorough, 72 Texas, 111; Galveston, H. & S. A. Ry. Co. v. Smith, 59 Texas, 407; San Antonio & A. P. Ry. Co. v. Trigo, 49 Texas Civ. App., 523; Drake v. San Antonio & A. P. Ry. Co., 99 Texas, 244.)

Chief Justice Roberts, in the Murphy case, discusses at length the proposition that it is the province of a jury to determine negligence with respect to rates of speed, and Chief Justice Gaines used, in the Dorough case, this language: "The plaintiff testified that he did not know how fast the train was running; that it was difficult to tell the speed of a moving train, but that he thought at the time he could board the train with safety; that he could safely board a train running at five miles; that he could get on one running at fifteen, but did not think he could if it was running twenty-five miles per hour. Another witness testified the train was running at the rate of six or eight miles an hour. The company did not call any of the employes who were on the train at the time to prove the rate of speed or any other fact. In the case of Texas & P. Ry. Co. v. Murphy, *supra,* this court in its opinion quotes with approval this language: 'It was for the jury to say whether the danger of boarding the train when in motion was so apparent as to make it the duty of the passenger to desist from the attempt,' citing Johnson v. Railroad Co., 70 Penn., 357. We have not the same power over the verdict that the court had before whom the case was tried below, and can not say that the conduct of the plaintiff in attempting to board the train was so manifestly negligent that the jury were not warranted in finding to the contrary."

The fact that plaintiff was an employe and Dorough was a passenger can make no difference in the principle to be applied. But if there could be any difference, it seems to us it ought to be in favor of Sullivan, because he rested upon a duty to get on the train, and it was optional with Dorough whether he did or not. The fact, too, that plaintiff, if he did not undertake to get on, would be separated from his train and left at a siding were also circumstances to be taken into account.

We think that the evidence was sufficient for the jury to find that the plaintiff's injuries proximately resulted from the negligence of the defendant's operatives in not reducing the speed of the train to such a rate that plaintiff could safely board the cars, and that plaintiff did not assume the risk of being injured and was not guilty of contributory negligence in attempting to board the cars under the circumstances. The assignments are overruled.

What we have said above disposes also of appellant's fourth, fifth

and sixth assignments of error, which are overruled without further comment.

By its third assignment appellant complains of the action of the court in overruling the thirteenth ground of its motion for new trial, which asserted that the verdict was contrary to the overwhelming preponderance of the testimony to such extent as to show manifest injustice to defendant, in that there was no testimony showing definitely the speed of the train at the time of the injury, or that the train was being operated at a negligent rate of speed, nor was there any averment in the petition charging that the train at that time was being operated by those in charge of it in a manner or at a rate of speed that was contrary to the custom or usage of defendant, or that there was any usage or custom with regard to speed, nor that plaintiff then relied upon such usage or custom as to speed.

The evidence shows that the train was moving too rapidly for appellee to board it with safety. While he did not allege that there was a custom or usage with regard to speed on such occasions, he did allege that it was "the duty of the engineer and conductor in charge of said train to so reduce the speed thereof as would enable the plaintiff to get on the train with reasonable safety to himself." The plaintiff testified that it was usual to run trains at about six or eight miles an hour under such circumstances, and that the train on this occasion was run at a greater rate of speed, and that it was the excessive speed that caused his injury. The petition was not excepted to because it did not state the rate of speed to which the train should have been reduced or because it did not allege that it was usual or customary under such circumstances to run the same at any particular rate of speed, and there was no objection to the evidence of what was usual on such occasions. What the rate of speed should have been was, under the pleadings and proof, a question for the jury. The assignment is overruled.

The seventh assignment assails paragraph seven of the court's general charge, which reads as follows: "You are further instructed that if you believe from the evidence that the unevenness of the ground over which plaintiff was moving at the time he fell, if you find he did not fall as alleged by him, was the sole cause of his falling, you will return a verdict for defendant; but in this connection you are instructed that if you believe the unevenness of the ground was only a contributing cause to the fall of plaintiff, and you believe that the efficient cause was the rate of speed at which the employes in charge of the train ran the same, then the fact that the unevenness of the ground may have contributed to his fall would be no bar to plaintiff's right to recover, if you believe him entitled to recover under the law as submitted to you in paragraph V of this charge."

Under this assignment appellant advances this proposition, that it is error for the trial judge to use an abstruse word or phrase in his charge without a clear and full explanation of it. The abstruse word in the charge is not pointed out by appellant. However, conceding that the court used such a word, the appellant, in the absence of a requested special instruction explaining the meaning of the word, is in no position to complain.

A second proposition under this assignment in effect is that it is

error for the trial judge in his charge to the jury to comment on the weight of the evidence, or emphasize any particular fact or group of facts, or otherwise indicate to the jury an opinion as to the weight or importance of any given fact or circumstance in the evidence. This is a correct statement of an abstract legal principle; but appellant has omitted to point out, and we fail to perceive, in what manner this principle is violated by the charge complained of. The assignment can not be sustained.

Appellant's requested instructions numbers four, seven and nine, set out in the eighth, tenth and eleventh assignments of error, were sufficiently embraced in and covered by the court's general charge, and it was not error to refuse to give them to the jury. The assignments raising the points are overruled.

What we have said in disposing of the third assignment sufficiently disposes of the ninth, which complains of the refusal of the court to give the sixth special charge instructing the jury to disregard any evidence as to usage or custom in determining the question of defendant's negligence. The assignment is without merit and is overruled.

We are of the opinion that the record is free of reversible errors, and that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.