Argued February 6, affirmed February 19, rehearing denied March 19, 1918.

## YORK v. SOUTHERN PAC. CO.

(170 Pac. 927.)

**Master and Servant—Question for Jury—Cause of Injury.**

1. In action for death of servant by master's negligence, where an eye-witness saw the accident, which did not involve any probability as to its cause, the principle that, when there are two or more probable causes of an injury, the question should be submitted to the jury, did not apply.

**Master and Servant—Action for Death of Servant—Direction of Nonsuit.**

2. Nonsuit *held* properly directed in action under Federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. Stats. 1916, §§ 8657–8665), for death of car-dumper killed while

attempting to board a train of flat cars in motion, where he was walking along by the standing train, and had opportunity to board it while standing still, but did not attempt to board it until it was in motion.

ON PETITION FOR REHEARING.

**Master and Servant—Injuries to Servant—Scope of Employment—Necessity of Showing.**

3.   Although the complaint alleged that it was the deceased servant's duty to help the train crew in making up a train, and that while helping in switching he was killed, there was no error in taking case from jury in the absence of evidence that as a part of his duties he was required to board the moving train in switching, in doing which he missed the step and was killed, since in the absence of such showing it was entirely conjectural whether deceased was engaged in his employment or in his own affairs.

[As to liability of master to servant volunteering upon a duty with which he is not charged, see note in 85 **Am. St. Rep.** 622.]

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.   Statement by MR. JUSTICE MOORE.

This action was instituted under the Federal Employers' Liability Act by Johanna York, the widow and administratrix of Lewis York, against the Southern Pacific Company and the Pacific Railway & Navigation Company, corporations, to recover damages resulting from the death of her husband which is averred to have been caused by the carelessness of the defendants' agents while he was employed on a work train on an alleged interstate railroad, extending from Hillsboro, Oregon, to Tillamook, in this state.   The complaint substantially charges that on March 17, 1915, York was commanded by the defendants' agents to assist in cutting out cars from a train and in setting brakes thereon at Miami Rock Quarry, and in walking along the track, while obeying the order, he attempted to board the train when it was suddenly started, thereby hurling him to the ground, and causing his death.   The specific acts of negligence relied upon as grounds for the recovery are set forth in substance as follows: (1) That the defendants failed to provide a safe place in which York

was required to perform the service demanded of him along the side of the railroad, which part of the way where he was hurt, was then obstructed with rocks, holes and ditches; (2) that the train on which he worked was started before he had given any signal for that purpose, and it was then the duty of the defendants' employees not to move the cars until so indicated by him, and that the train was suddenly put in motion without giving him an opportunity safely to board any of the cars; and (3) that these employees attempted unnecessarily to make a flying-switch on a graded curve, which part of the track was known by them to be dangerous.

The answer denies the material averments of the complaint and for a further defense alleges in effect that at the time of the accident York was and prior thereto had been employed by the defendant, the Pacific Railway & Navigation Company, an intrastate railroad, as a car dumper to unload upon and along the right of way ballast with which to build up and improve the roadbed; that on March 17, 1915, he negligently and without any directions therefor attempted to board a rapidly moving train and in doing so slipped, fell and was killed, which injury was not brought about by the carelessness of either defendant, but was caused by his own negligence. For a second defense, it is substantially alleged that prior to the accident York had been employed as a car dumper, and repeatedly rode on the defendants' trains where it was the practice to drop at the quarry spur-cars, of which usage he had full knowledge and appreciated the danger to be encountered in attempting to board a train when it was in motion, and that he assumed all the risks incident to such switching and getting upon cars under such circumstances.

The allegations of new matter in the answer were denied by the reply, and the cause being regularly called for trial the jury, by order of the court, were permitted in a body and in charge of an officer to visit the scene of the accident. Upon their return the plaintiff introduced the testimony of her witnesses, whereupon a judgment of nonsuit was granted and she appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. J. C. Simmons* and *Mr. Sidney S. Johnson*, with an oral argument by *Mr. Simmons*.

For respondents there was a brief over the names of *Mr. Ben C. Day, Mr. William D. Fenton, Mr. Ralph R. Moody, Mr. T. B. Handley* and *Mr. John F. Reilley,* with an oral argument by *Mr. Day*.

MR. JUSTICE MOORE delivered the opinion of the court.

MR. JUSTICE BEAN dissents.

The testimony received tends to show that Lewis York, at the time of his death, was 36 years old, in good health and for more than a year prior to the accident he had been employed by the defendant, the Pacific Railway & Navigation Company, upon one of its work trains on that part of its track which borders upon the Pacific Ocean and upon the northerly and easterly shores of Tillamook Bay. Near the station of Garibaldi on the north beach of that inlet from the sea is a switch on a curve of the main line which connects with a spur track that leads to the Miami Rock Quarry, from which stone pit trainloads of material were taken to build up and ballast the roadbed and for shipment to a jetty which was being constructed on the bar at the entrance to that bay. When earth

was being loaded with a steam-shovel upon cars at another place, Mr. York had signaled the engineer in charge of the locomotive, who, obeying the signs, caused the train to be moved in the requested direction so as to place a car in proper position to be loaded. When cars thus freighted reached the proper destination, Mr. York assisted in manipulating the brakes and the load being dumped he deposited the material along the right of way and elsewhere as directed.

A freight train was halted near Garibaldi, March 17, 1915, and the caboose and two rear box-cars were uncoupled and left standing on a trestle while the train was moved a short distance ahead and a carload of lumber was set off on a switch. The remainder of the train, said by a witness to consist of from 7 to 13 flat cars, were prepared to make a flying-switch upon the spur track leading to the quarry. These cars were made ready by releasing by hand the air confined in the brake cylinders, which operation is called "bleeding" the cars. On that day two brakemen assisted in the movement of the train at the spur track. One of them stood on a flat car near the locomotive while the other was stationed at the lever which operated the switch on the main line. The flying-switch was made by uncoupling the train when it was in rapid motion and allowing the locomotive to run along the main line. As soon as the engine passed the brakeman stationed at the target, he suddenly turned the switch and the momentum which the cars had thus attained shunted them upon the quarry spur, and beyond the line of the switch. The lever was then replaced by the brakeman and the locomotive backing up would be coupled with the cars which were left standing upon the trestle.

It is quite probable that the attention of the train crew mentioned was so occupied with the performance of their respective duties that neither member thereof saw the accident, or knew anything about it until informed of the injury by George Krumlauf, who was then standing on an embankment of the railroad about 60 feet from the place where Mr. York was killed and witnessed the entire scene. Krumlauf's testimony is to the effect that Mr. York, walking along the track beside the flat cars, released the air from the brake cylinders until he reached the locomotive. Having discharged that duty he began retracing his steps and as he was pursuing his journey and while he was opposite to the witness the train was started. York thereafter continued his course, walking about a car-length. In the meanwhile the train had attained a velocity of about 12 miles an hour and several cars passed him. When the rear end of the flat car next to the last approached, he grasped the handholds thereof and swung his feet towards the stirrup, but missing the step placed there for that purpose he fell, sustaining the injury of which he immediately died.

It appears that several globular rocks, about two feet in diameter, were partially imbedded in the earth, forming the slope of the roadbed about 6 or 8 feet from the rail on the side of the track where the accident happened. No obstruction of any kind, however, is mentioned as having been found on the berm of the grade along which Mr. York walked as near the ends of the ties as the width of the cars would safely permit. All the cars that were placed upon the spur track were supplied with handholds and stirrups, whereby a person accustomed to the service could safely have boarded the train when it was starting. No testimony was offered tending to show that it was

Mr. York's custom, except when loading cars, to indicate when they should be started, or that it might reasonably be expected he would on that occasion signal the engineer to move the train.

It is contended by plaintiff's counsel that the jury having visited the scene of the accident, thereby acquired such a knowledge of the *locus in quo* as to enable them carefully to consider and accurately to determine the degree of danger to be encountered at that place under the circumstances detailed, and such being true, an error was committed in granting the judgment of nonsuit. A different conclusion has heretofore been reached by this court which determined that the only purpose to be subserved by permitting a view of premises by a jury, was to enable them intelligently to apply the evidence received at the trial to the mental picture thus obtained, and that their verdict must be predicated upon the testimony of witnesses so given and not upon such observation: *Crane* v. *Oregon R. & N. Co.,* 66 Or. 317 (133 Pac. 810); *Molalla Electric Co.* v. *Wheeler,* 79 Or. 478 (154 Pac. 686). No valid reason is perceived for changing the rule thus established.

1. Invoking the legal principle announced in the case of *Hartman* v. *Oregon Electric R. Co.,* 77 Or. 310, 317 (149 Pac. 893, 151 Pac. 472), where it was said: "When there are two or more probable causes of an injury, the question should be submitted to the jury," plaintiff's counsel maintain that the facts herein bring the case within that rule and hence an error was committed in granting the nonsuit. In the case so relied upon, J. E. Harris, who was working in a tunnel which was then being cut for that defendant company, heard a scream and hastily going to the mouth of the excavation, he found the plaintiff's son lying dead, probably

from a shock of electricity which might have been
caused from a defective switch or from lack of an as-
sistant. As no person witnessed the death, the pre-
sumption was indulged that the deceased had exer-
cised due care (*Cassidy* v. *Angell*, 12 R. I. 447 (34 Am.
Rep. 690); *McBride* v. *Northern Pac. R. Co.*, 19 Or. 64
(23 Pac. 814), and it was held that no error was com-
mitted in submitting the case to the jury. In the case
at bar, however, as Mr. Krumlauf witnessed the acci-
dent, which did not involve any probability as to its
cause, there was no necessity to invoke any presump-
tion as to the manner in which the injury was inflicted.
No error was committed in this particular.

On the cross-examination of Mr. Krumlauf, the de-
fendant's counsel referring to the interval occurring
after the compressed air was released from the brake
cylinders inquired:

"During the time the train was standing there York
was walking back along the train?"

The witness replied, "Yes, sir."

"Q. What was there to prevent him from getting on
the train while it was standing there?

"A. Nothing that I know of.

"Q. When the train started up, did it start slowly
and then increase in speed?

"A. Yes, sir.

"Q. It kept going faster?

"A. Yes, sir.

"Q. When it first started off it started slow?

"A. Not so very slow.

"Q. What was there to prevent him from getting on
when it first started up?

"A. I don't know; nothing, I guess.

"Q. Did the train start up with any big jerk or just
in the usual way as they do in there in those flying-
switches?

"A. Just like they usually do."

On redirect examination this witness was further asked: "How do they always start in making a flying-switch?

"A. They have got to start kind of fast.

"Q. And they started that way before Mr. York got on?

"A. Yes, sir."

Mr. York, having been in the employ of defendants more than a year and engaged in the service which he was performing when he was hurt, must have known when he assisted in preparing the cars to make a flying-switch, that the train would soon start, and as he could have boarded the cars at any place, self-preservation should have prompted him to do so before the train was put in motion.

2. A careful examination of all the testimony given at the trial fails to disclose any negligence on the part of the defendants' employees, that caused the injury set forth in the complaint. While contributory negligence is not a bar to the maintenance of an action of this kind, there must be some carelessness on the part of an employer or of his servant before any basis can be established upon which must be constructed the fabric of contributory negligence. Failing to find any testimony tending to create such foundation, no error was committed in granting the nonsuit. The judgment is therefore affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE MC-CAMANT concur.

MR. JUSTICE BEAN delivered the following dissenting opinion:

As I view this case the solution thereof depends upon the determination of a question of fact. This

is demonstrated by the majority opinion by the learned
justice in that part wherein it is found in effect that
it was the duty of York, the decedent, to have boarded
the cars before they were in motion at a different place
from that at which he attempted to do so. To quote
the exact language of the opinion:

"Mr. York having been in the employ of defendants
more than a year and engaged in the service which he
was performing when he was hurt, must have known
when he assisted in preparing the cars to make a flying-
switch, that the train would soon start, and as he could
have boarded the cars at any place, self-preservation
should have prompted him to do so before the train
was put in motion."

The manner of performing the services by the plain-
tiff's decedent pursuant to his duty is indicated prin-
cipally by the circumstances as they actually occurred
as detailed by Krumlauf, an eye-witness to the catas-
trophe. From these circumstances different minds
might reasonably draw a different conclusion from
that deduced by the learned justice. There is another
phase of the case that seems to go hand in hand with
that referred to. A jury might fairly conclude from
the evidence that York was performing his duties in
the regular way and that it was necessary for him to
board the cars that were being switched on to the spur
track at the rear of such cars as he was endeavoring
to do in order properly to set the brakes and hold
the cars when they reached their destination near the
quarry; that if he had got on to the front part of the
cars he would have had to walk to the rear on moving
cars to his great danger; that it was careless and dan-
gerous for the cars to be started and moved at the
rate of about 12 miles an hour before York got aboard;
and that in the exercise of due care those in charge of
the train should have observed that the workman had

boarded the cars which were to be left in his charge before the same were suddenly started and should have waited a few seconds longer for him to do so. It might appear to a jury that in working around the dump-cars and grading the road for about a year York had had but little real experience in performing duties similar to those required of a regular brakeman, and that greater care was necessary for his reasonable safety than if the cars were being switched by an expert brakeman. The majority opinion seems to impute negligence to the workman because he attempted to board a moving car instead of getting on at another place before the cars were put in motion. It is not negligence *per se* to get on or off a moving train: *Eidem* v. *Chicago, Rock Island & P. R. Co.*, 158 Ill. App. 82. We quote from *Louisville & N. R. Co.* v. *Bargainier*, 168 Ala. 567 (53 South. 138):

"This court has time and time again held that it is not dangerous or negligence *per se* to get on or off a moving train or engine."

It is stated in 3 Labatt's Master & Servant (2 ed.), Section 1254 (5), as follows:

"In some cases the mere fact that a servant attempted to mount a moving train without any necessity seems to have been regarded as sufficient to prevent his recovering damages. But the preferable view would seem to be that, in view of the normal requirements of railway work and the universal practice of railway employees, the inference of negligence should not be drawn, as matter of law, unless there is proof of some aggravating circumstance which rendered the action of the servant especially imprudent": See notes to this section.

In *Kansas City So. R. Co.* v. *Billingslea*, 116 Fed. 335 (54 C. C. A. 109), it was held that contributory negligence could not be predicated upon the fact that a

switchman mounted a moving train which was being switched in the yards of the company. In any event, however, contributory negligence is not a defense under the Federal employer's liability law and therefore it is necessary in order to support the judgment of nonsuit to hold that the injury was caused entirely by the negligent act of the decedent.

The complaint alleges that at the time of the injury the decedent, Lewis York, was employed as a laborer with duties to help the train crews; that the defendants carelessly and negligently started and put in motion said train before the deceased had boarded it or was given an opportunity to board the same, and that it was then and there started with a jerk and lurch, thereby preventing said decedent from boarding said car or cars in safety; that the defendants were careless, reckless and negligent in operating and running said cars at a high and dangerous rate of speed before allowing the deceased to board the same and thereby preventing him from any reasonable chance he might have had to get on in safety. The evidence tended to show that the decedent at and a short time before the accident was performing his regular duties and tended to support the allegations of the complaint, especially when the circumstances as detailed by the witnesses are considered.

It is stated in part in 3 Labatt's Master & Servant (2 ed.), Section 1111, as follows:

"Negligence in respect to the system upon which the master's business is conducted, is imputable: * * where railway rolling-stock is moved in such a way as to expose employees to unnecessary risk": See, also, note 7 to that section.

*Galveston, H. & S. A. R. Co.* v. *Sullivan,* 53 Tex. Civ. App. 394 (115 S. W. 615), is a case where a regular

brakeman was sent ahead of a freight train for some distance in order to flag and hold another train until his passed, when it was his duty to board his train. At the time when he attempted to do so it was run at a high rate of speed, more than 12 miles an hour. It was there held that it was the duty of the engineer and conductor in charge of the train to run it at a rate of speed which would enable such brakeman to get on with reasonable safety; that what that rate of speed was and whether the train was run at such speed were questions for the jury; and that the plaintiff did not assume the risk of being injured and was not guilty of contributory negligence in attempting to board the cars under the circumstances. The evidence was much the same in that case as in the one at bar, save that it was necessary for the plaintiff in the present case to prove the circumstances without the decedent. In the Sullivan case it is mentioned that Mr. Chief Justice Roberts, in *Texas & Pac. Ry. Co.* v. *Murphy,* 46 Tex. 356, 360 (26 Am. Rep. 272), discussed at length the proposition that it is the province of the jury to determine negligence with respect to rates of speed, and quoted with approval this language:

"It was for the jury to say whether the danger of boarding the train when in motion was so apparent as to make it the duty of the passenger to desist from the attempt": Citing *Johnson* v. *West Chester & P. R. Co.,* 70 Pa. 357.

*Houston & T. C. R. Co.* v. *Anderson* (Tex. Civ.), 132 S. W. 377, is a case where, without giving the warning required by its rules of intention to move a car, defendant railroad moved a car thereby causing plaintiff, a brakeman, who was on the car discharging his duties and about to climb down therefrom, to fall and be injured. It was held that defendant was liable.

I do not think it should be said as a matter of law that the defendants in the case at bar were exercising reasonable care and were not negligent in starting the cars and moving them at the rate mentioned when the decedent, in the performance of his duty, was attempting to board the same. It seems to me that the question of negligence should have been submitted to the jury.

---

Rehearing denied March 19, 1918.

PETITION FOR REHEARING.

(171 Pac. 567.)

*Mr. J. C. Simmons* and *Mr. Sidney S. Johnson,* for the petition.

*Mr. Ben C. Day, Mr. William D. Fenton, Mr. Ralph R. Moody, Mr. T. B. Handley* and *Mr. John F. Reilley, contra.*

Department 2. Mr. Justice Moore delivered the opinion of the court.

3. In a petition for a rehearing it is contended that from the testimony received it might reasonably have been concluded that the deceased, immediately prior to and at the time he was injured, was performing a service and discharging a duty demanded of him by reason of his employment, and such being the case, an error was committed in not reversing the judgment and remanding the cause for a new trial. All the material allegations of the complaint respecting his duties and the negligence charged will be set forth. That pleading states:

"Plaintiff alleges that on or about the seventeenth day of March, 1915, the decedent, Lewis York, was

employed as a laborer on the defendants' line of road, * * with his duties to help the train crew to make up a train, to cut out cars, and to dump cars, hauling and transporting rocks and like material on, along and upon defendants' said road and roadbed, * * and while said decedent was performing the work, labor and duties as was required of him, he was ordered and commanded and required to assist in cutting out cars from the train in which there were other cars, * * and setting brakes at what is known and called 'Miami Rock Quarry.' * * And while thus commanded to assist the said crew in performing the work for his master, he was then and there, at and along the said train, and the cars thereof, performing those duties commanded of him, and as was required of him, all of which were well known and within the knowledge of the defendants and each of them, and before he had safely boarded said cars, the train was suddenly, violently and recklessly started and was put in motion with a jerk and a lurch by the defendants, their officers, agents and employees, and the said cars striking the said decedent and throwing him under the said train and then and there inflicting mortal wounds resulting in his death.

"Plaintiff alleges that the defendants were and each of them was negligent in the following particulars: First. That defendants and each. of them, recklessly, carelessly and negligently failed and refused to provide and maintain the deceased, Lewis York, with a safe and proper place along their railroad and roadbed to do and perform; the work and labor he was commanded and required to do, and did then and there furnish and maintain an unsafe and dangerous place and places for the deceased to perform said work in that, there were rocks, holes and ditches alongside of said railroad track and roadbed and at the place and places for switching car and cars in the said rock quarry.

"Second. That defendants and each of them recklessly, carelessly and negligently started and put in motion the said train before the deceased, Lewis York, had given any signal or notice to start the same, it

being then and there the duty of the defendants, agents and employees to not start the said train until signaled so to do by the deceased, Lewis York.

"Third. That defendants and each of them recklessly, carelessly and negligently started and put in motion said train before the deceased had boarded it or was given any opportunity to board the same, and that the said train was then and there started with a jerk and lurch, thereby preventing the said deceased, Lewis York, from boarding the said car or cars in safety.

"Fourth. That defendants and each of them was careless, reckless and negligent in operating and running said cars at a high and dangerous rate of speed before allowing the deceased, Lewis York, to board the same, and thereby preventing the said Lewis York from any reasonable chance he might have had to get on said car in safety.

"Fifth. That the defendants were negligent in attempting to perform and make a flying-switch at the place, while the same was then and there being done, for the reason that there was a curve and a grade at the said place and that the conditions and manner in performing the same was unsafe and dangerous, which was known or could have been known by the defendants or either of them, their officers, agents and employees, and that said flying-switch used was not a necessity and could have been avoided by the defendants and each of them in carrying out their said business."

The complaint, it will be seen, does not aver that Lewis York was, when he was hurt, or ever had been, employed by the defendants or either of them as a brakeman, and a careful re-examination of the entire testimony fails to show a statement by any witness that the deceased had ever performed or discharged any duty of that kind.

It will be remembered that the second ground of negligence charges that it was incumbent upon the defendants, their agents, etc., not to start the train until

signaled so to do by the deceased, thereby impliedly averring that he supervised or controlled in some manner the movement of the cars. Not a word of testimony to that effect or tending in any manner to substantiate such allegation can be found in the transcript.

It nowhere appears from an inspection of the record before us that it was incumbent upon the deceased to board the train, or that the performance of any duty whatever was required of him in preparing the cars to make a flying-switch, except so far as such service might possibly be inferred from the testimony of George Krumlauf, who stated upon oath at the trial that he saw Mr. York, just prior to the time of the accident, releasing the air from a cylinder beneath a car near the engine.

No testimony was received tending to show that it was at all dangerous for a person to pass over the decks of the flat-cars when they were in motion, or that Mr. York was directed or even expected to set or handle the brakes on the rear or any other car of that part of the train.

The evidence shows that from the trestle, upon which the caboose and two box-cars were left when the train was uncoupled, to the switch was about 400 feet, and from that point to the rock quarry about 600 feet farther. Why Mr. York attempted to board the moving cars which were to be taken only such a short distance and left, is a matter of conjecture so far as disclosed by any testimony. In the absence of such showing tending to prove any allegation of the complaint, we are compelled to adhere to the former opinion. The petition for a rehearing is therefore denied.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and McCAMANT, J., concur.