## INTERNATIONAL–GREAT NORTHERN R. R. v. LOWRY.

### No. 4983.

Court of Civil Appeals of Texas. Texarkana.

Oct. 15, 1936.

Rehearing Denied Nov. 12, 1936.

Sewell, Taylor, Morris & Garwood, of Houston, and J. A. Bulloch, of Tyler, for appellant.

Lasseter, Simpson & Spruiell and Oran Lowry, all of Tyler, for appellee.

HALL, Justice.

Appellee, Lowry, was a car repairman in the employ of appellant at Troup, Tex. On May 2, 1931, he received the following messages:

"Pal—5–2–31
"Car Men
"SHPX 10188 at Gould with hole in B end rush to Gould on first thing available and stop leak

"JWM 10:15 AM."

"Palestine 1130 AM May 2 1931
"Car Repairer
"Troup Texas
"Following cars set out by extra 541—1522 South Condr Devers at Gould Ban Order yesterday SHPX 8115 Oil end sills draw bars train line bad order.

"SHPX 10188 needs plug on B end close to top of tank account oil leaking out

"SHPX 1157 carrier plates gone also needs one bolt

"SHPX 10079 end sills caved in train line broken

"NATX 1525 carrier plats and bolts on one side missing

"Car Repairer Troup arrange repairs calling on Palestine for necessary assistance if needed advising WBX for all cars at Jacksonville. C—115

"JWM 105 P."

In response to these messages appellee boarded the caboose of a freight train then

at Troup and proceeded to Gould, where the bad-order cars were set out. Before boarding said caboose, appellee requested the agent of appellant at Troup to arrange with the conductor of the freight train to stop or slow down said train at Gould so he could alight therefrom and repair the bad-order cars. The agent did inform the conductor of the presence of the appellee and his helper on the caboose of the freight train and requested him to inform the engineer of such fact. This the conductor did not do, although he rode on the engine with the engineer from Troup to Gould. On approaching the station at Gould, and a short distance before reaching same, the engine ran over two torpedoes, which caused the engineer to slow the speed of his train to about 20 miles an hour. When he rounded the curve where he observed the track was clear, he began to increase his speed. By the time the train reached the station of Gould, it was proceeding at a speed of about 35 miles per hour, and continued on through without stopping or reducing its rate of speed. When the caboose was at or near the dirt road crossing at Gould, appellee and his helper observed a tank car on a siding leaking oil, and believing, as appellee testified, that the train was proceeding at the rate of speed of 12 to 15 miles an hour, determined to alight therefrom, and so informed his helper and requested him to get off said train. They did alight from said moving train and appellee was injured, and this suit was brought by him in the district court of Smith county against appellant to recover damages for his injuries.

Appellee alleged that he was inexperienced in alighting from moving cars; that, when he saw the tank car rapidly leaking oil on the property of appellant, he, without observing or realizing the danger incident to alighting from the train at the speed at which it was going, impulsively and on the spur of the moment decided to alight from the train in order to protect and repair the leaking oil tank car, the property of appellant; "that at the time and on the occasion when he left the freight train and was injured, * * * he concluded, after appraising the situation, that said train was only moving from twelve to fifteen miles per hour; that he did not know that leaving said train under all the circumstances then existing would endanger his safety; and, further, that the danger incident to his leaving the train at the time and upon that occasion was not obvious to him and particularly was not a danger which was so ob-

vious that the plaintiff, as an ordinarily prudent person, under the circumstances, would and should have appreciated." Appellee alleged several grounds of negligence, only two of which were submitted to the jury. The first relating to the alleged negligence of the agent in failing "to give the conductor instructions to stop the train at Gould to permit plaintiff Lowry to get off at such station to make car repairs," and the second relating to the alleged negligence of the conductor in failing "to have said train stopped at Gould at the time and on the occasion in question to permit the plaintiff to get off."

The appellant answered by general demurrer, general denial, and specially pleaded that appellee was guilty of contributory negligence which was the sole proximate cause of his injuries and that the appellee assumed the risk of alighting from said moving freight train under the circumstances existing at the time. Appellant alleged further that the car which appellee was directed to repair was loaded with oil at Friars, in the State of Texas, and destined to the Sun Oil Refining Company near Philadelphia, Pa., and "as a consequence of all of which, the said James O. Lowry, appellee, at the time of receiving his alleged injuries was engaged in interstate commerce so that the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] applies to and covers and controls said occurrence, the defendant (appellant) being at said time a common carrier by railroad."

The case was submitted to the jury on special issues which were answered favorably to appellee and upon which a judgment was rendered in his behalf. Appellant made a motion for a verdict non obstante veredicto, which was overruled. From the judgment entered appellant prosecutes its appeal to this court.

An agreed statement as to the origin and destination of the contents of the oil tank car which appellee was ordered to repair brings the case, in our opinion, under the terms of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

We are met at the outset with a number of propositions raising the question of the sufficiency of the evidence to support the judgment of the trial court, and that the negligence of appellee was the sole proximate cause of his injury. We shall consider these propositions together. The facts, as stated above, show that appellee was rightfully on the caboose of appellant's

freight train going to repair the leaking tank car at Gould, a distance of .7 or 8 miles south of Troup. The conductor in charge of the train knew, so the jury found, that appellee and his helper were on said caboose and that they expected to get off his train at Gould in order to perform the work assigned to them. The evidence is undisputed that the conductor failed to stop the train or slow same down so appellee and his helper could get off in safety, and in this respect the jury found him to be negligent, which negligence, they also found, was a proximate cause of appellee's injury. Certainly it was the duty of the conductor in charge of said train, in the exercise of ordinary care, either to stop the train at Gould or to slow same down so that appellee could alight therefrom with safety to his person and be able to perform the duty which had been assigned him. If this duty had been performed, undoubtedly the appellee would not have been injured. The appellee had a right to assume that the operatives of said train, knowing he was aboard, would slacken the speed at the proper time and place so he could alight from same and repair the leaking tank car. However, it is argued with a great deal of force that appellee's act in alighting from said train is solely responsible for his injury, and the jury found that appellee was guilty of contributory negligence in this regard which was a proximate cause of his injury. But, as stated above, the jury also found that the conductor's negligence was a proximate cause of appellee's injury. In other words, the jury found that the negligence of both parties combined was the proximate cause of appellee's injuries, but that neither was the sole proximate cause of his injury. In this connection it is noted from the evidence that the appellee was inexperienced in getting on and off moving trains, and, further, he thought the train at the time of his injury was moving at a rate of speed of 12 or 15 miles per hour. It appears from evidence that he was mistaken in his judgment of the speed of the train. However, he had a right to expect that the conductor in charge of said train would cause the speed to be reduced to such an extent that he could alight therefrom in safety. The conductor should have known that appellee might attempt to get off the train at the place where his orders called him to repair the tank car. We think the issues of appellant's and appellee's negligence were raised by the evidence and were properly submitted to the jury, and under all the facts and circumstances in this case we do not think we would be justified in holding that the contributory negligence of appellee, as a matter of law, was the sole proximate cause of his injury. Chesapeake & Ohio Ry. Co. v. De Atley, 241 U.S. 310, 36 S.Ct. 564, 60 L.Ed. 1016; Lancaster v. Fitch, 112 Tex. 293, 246 S.W. 1015; Washington & O. D. R. Co. v. McPherson, 58 App.D.C. 211, 26 F.(2d) 989; Galveston, H. & S. A. R. Co. v. Sullivan, 53 Tex.Civ.App. 394, 115 S.W. 615.

■ The appellant makes the further contention that appellee as a matter of law assumed the risk of being injured when he alighted from the moving freight train at Gould and therefore cannot recover damages therefor. With this contention we cannot agree. What we have said in the foregoing discussion is applicable in a large measure to the question here. It is said in Gila Valley, G. & N. Ry. Co. v. Hall, 232 U.S. 94, 34 S.Ct. 229, 231, 58 L.Ed. 521, that "an employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person, under the circumstances, would have appreciated it." The acts and conduct of appellee on the occasion of his injury cannot be measured by the acts, under the same or similar circumstances, of a highly efficient trainman familiar with the art of alighting from or boarding moving trains, but the standard by which his action on the occasion of his injury must be measured is that of the average man. It was held by the Supreme Court of this State in the case of Orange Lbr. Co. v. Ellis, 105 Tex. 363, 150 S.W. 582, 586, that "the knowledge which bars the servant from re-

covery where he enters or continues in the service with defective machinery is the complete *appreciation of the risk, and not a mere apprehension of possible danger."* (Italics ours.) And the case cited last above holds that the burden of proving the assumed risk rests on the master. Now, under the facts of this case, appellee had the right to assume that the conductor, who knew he was on the train and was expected by his master to get off at Gould and repair the leaking oil tank car, would perform his duty and require the engineer to either slow the train down or stop same in order for him to alight therefrom with safety, at the only place on the railroad where he could perform the service required of him. So with this in mind, and his limited power to judge the speed of moving trains, he concluded the train was moving at a rate of speed of 12 to 15 miles an hour and that he could alight therefrom in safety. We realize, in this connection, that an occasion could arise where a person alighting from a speeding train would assume the risk incident thereto, as a matter of law; and we realize further that the line of demarcation in cases of this character presenting questions of fact and questions of law is hard to define. That the question here presented is on the borderline cannot well be denied. However, we have concluded that under the facts of this case the question of assumed risk here presented is one of fact to be determined by the jury. Kanawha & M. R. Co. v. Kerse, 239 U.S. 576, 36 S.Ct. 174, 60 L.Ed. 448; Chesapeake & Ohio Ry. Co. v. De Atley, supra; Texas & P. Ry. Co. v. Baldwin (Tex.Civ.App.) 25 S.W.(2d) 969, affirmed by Supreme Court, 44 S.W. (2d) 909; Hawthorne v. International-Great Northern R. Co. (Tex.Civ.App.) 63 S.W.(2d) 243.

■ Complaint is also directed at the action of the trial court in refusing certain special issues requested by appellant. We have carefully examined these issues, and, in our opinion, issues Nos. 8, 9, 10, and 11 are clearly on the weight of the evidence in that they assume certain facts to exist which were disputed. The contents of the other requested charges which were refused was embodied in the charge of the court submitted to the jury; hence we conclude there was no error in refusing these requested issues.

■ Appellant also contends that the trial court erred in failing to set aside the verdict of the jury because of a material conflict between the jury's answers to special issue No. 10 and special issues Nos. 16 and 19. In answer to No. 10 the jury found that an ordinarily careful and prudent man under the facts and circumstances at the time would have alighted from said train at the time and on the occasion in question; whereas, in answer to Nos. 16 and 19, the jury found the appellee guilty of contributory negligence, first, in "not remaining on said train until it should be stopped"; and, second, "in alighting from said train while same was moving at the rate of speed it was moving at the time." In answer to special issue No. 29 the jury fixed appellee's damages at $30,000. In answer to special issue No. 30 the jury diminished appellee's damages, on account of his contributory negligence as found in answer to issues Nos. 16 and 19, $10,000, leaving the amount of damages due appellee at $20,000. So, taking the jury's answer to issues Nos. 16 and 19 in connection with the answers to all the other issues in the case, including the answer to No. 10, no other judgment could be rendered than one for appellee, and the trial court did not commit error in entering a judgment for appellee based upon the jury's answers to the various issues. In Perez v. Houston & T. C. R. Co. (Tex.Civ.App.) 5 S.W.(2d) 782, 783, it is said:

"Appellant presents four propositions in his brief, his main contentions being that, since the jury found he had been damaged to the extent of $500, the court should have entered judgment for him for said amount, regardless of any of the other findings; and further, that the findings of the jury were in such conflict the court should not have entered any judgment thereon, but should have set the findings aside and ordered a new trial because of said conflicts. Appellant's contention with reference to the conflicts in the jury's findings is that, since the jury found that appellant was guilty of contributory negligence which caused his injury, and that appellee was guilty of negligence, which it found was not the cause of the injury, and then found that the injury was the result of an accident, said findings are in conflict. We overrule this contention.

"It is the universal holding of our courts that where the essential findings of the jury required for the court to enter judgment are in such conflict that one finding destroys the other, and therefore amount to no finding at all, the trial court should refuse to enter a judgment and should declare a mistrial.

Texas Electric Railway v. Burt (Tex.Civ. App.) 272 S.W. 255, and authorities there cited; Mayo v. Ft. W. & D. C. Ry. Co. (Tex.Civ.App.) 234 S.W. 937; Austin v. McShane [Tex.Civ.App.] 289 S.W. 705. In order, however, for there to be such a conflict in the findings of the jury that a judgment cannot be entered, it must appear from the answers to certain issues one party would be entitled to judgment, and under the answers to other issues he would not be and the other party would be entitled to judgment. The mere fact that there may be inconsistencies in the findings of the jury, or that the jury may have found a number of different issues favorably to one party which might apparently be in conflict, would not authorize the trial court to refuse to enter a judgment on said findings, if, as a matter of law, under no phase of the findings of the jury and in no contingency could any other judgment be entered.

"Where the jury on the controlling issues finds the facts and there is no contradictory finding, the trial court should enter judgment in conformity with the jury's findings. Cortimeglia v. Davis, 116 Tex. 412, 292 S. W. 875; Miller v. Lemm (Tex.Com.App.) 276 S.W. 211; Deal v. Craven (Tex.Com. App.) 277 S.W. 1046; Harris v. Western Union Telegraph Co. (Tex.Civ.App.) 281 S.W. 877; Liverpool & London & Globe Ins. Co. v. Cabler (Tex.Civ.App.) 271 S.W. 441. The jury, in answer to the special issues submitted in this case, found each of them against appellant. Under no phase of the case, according to the jury's findings, was appellant entitled to a judgment. The jury found that appellee was not guilty of any negligence which caused the injury; that the negligence of appellant caused his injury; that appellant was guilty of contributory negligence; that the injury received was the result of the risk of his employment, which appellant assumed; and that the injury was the result of an unavoidable accident. The jury having found for appellee on each of the controlling issues, it was entitled to a judgment in its favor."

■ Appellant also assigns as error the action of the trial court in admitting in evidence the testimony of appellee wherein he stated that "he figured the train (at the time he alighted) was going about twelve or fifteen miles per hour." We do not think this was error. The appellee was charged by appellant with contributory negligence in twelve particulars regarding his getting off the train on the occasion of his injury, and

we think he should be permitted to give his opinion with respect to the speed of the train at the time. This evidence would tend to explain his actions on the occasion of his injury. It is true the jury would not be bound absolutely by his testimony, but they should weigh it together with all other testimony touching this phase of the case to determine whether, on the occasion of his injury, appellee's act comported with that of an ordinarily prudent person under the same or similar circumstances. We think our conclusions in this respect are borne out by the following cases: Baldridge & Courtney Bridge Co. v. Cartrett, 75 Tex. 628, 13 S.W. 8; International & G. N. Ry. Co. v. Satterwhite, 19 Tex.Civ.App. 170, 47 S.W. 41, writ denied; Ft. Worth & D. C. Ry. Co. v. Abbott (Tex.Civ.App.) 170 S.W. 117.

■ The twenty-first proposition brought forward by appellant is: "The trial court erred in submitting to the jury that portion of the court's charge wherein the jury were instructed to make answers to the questions propounded as they found the facts to be from a preponderance of the evidence, over the objection of the defendant that said charge was confusing and misleading to the jury and inadequate as a charge or instruction to the jury upon the burden of proof, in that the jury might be led to believe from such charge and such language in said charge that in order to return a negative answer to the issues submitted to them it would be necessary for them to conclude that the preponderance of the evidence would require such an answer."

The trial court instructed the jury generally in part as follows: "You will not discuss nor take into consideration what the effect of your answers will be, but simply make answers to the questions propounded as you find the facts to be from a preponderance of the evidence, by which is meant the greater weight and degree of credible testimony." As a preface to each special issue the trial court used the words: "Do you find from a preponderance of the evidence." In each issue the burden of proof was rightly placed. Conceding that it was error for the trial court to give a correct definition of the term "preponderance of the evidence" in the beginning of his charge, it is our opinion that the same was rendered harmless by the court's placing the proper prefix to each special issue indicating the quantum of proof to be required before such issue could be answered in the affirmative.

We perceive no way in which this arrangement could harm appellant. We agree with the views expressed in the very recent case of Miller v. Wyrick (Tex.Civ.App.) 96 S. W.(2d) 253, 254. In passing upon a question very similar to the one involved here, the court said:

"Appellant insists that the trial court committed reversible error in not properly instructing the jury with reference to the burden of proof. Each and every issue was framed by the trial court, so as to properly cast the burden of proof, by beginning each with the approved formula, 'do you find from a preponderance of the evidence,' etc. But in the beginning portion of the charge the court stated: 'This case will be submitted to you upon special issues, which you will answer from a preponderance of the evidence as you find the facts to be.' It is insisted that the latter general instruction had the effect of leading the jury to believe that either an affirmative or negative answer would have to be based upon the preponderance of the evidence. We cannot agree with such contention. While it would have been preferable for the trial court to have omitted such general instruction, still we are unable to see how it possibly could have prejudiced the defendant's case in view of the manner in which the issues themselves were framed. Under any reasonable construction of the charge as a whole, the general reference to a preponderance of the evidence does not conflict with the burden of proof as placed by the issues, but is referable to and controlled by the specific placing of the burden of proof by the form of each issue. The cases of Texas Employers' Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W.(2d) 658; Psimenos v. Huntley (Tex.Civ.App.) 47 S.W.(2d) 622, and Federal Surety Co. v. Smith (Tex. Com.App.) 41 S.W.(2d) 210, cited by appellant were cases in which the issues were not so framed as to cast the burden of proof, and, therefore, the general instruction to answer the issues in accordance with the preponderance of the evidence was held not to supply the proper guide for the jury in answering the issues."

Appellant by its fifty-fourth proposition asserts that the evidence is "entirely inadequate to support a verdict of $30,-000.00." The evidence showed from appellee's viewpoint that his injuries were serious and not trivial and that his condition brought about by such injury was of a permanent nature. The evidence showed, further, that he was regularly employed by appellant as a car repairman earning 71 cents per hour, working eight hours each day, with some overtime at the same rate of pay. It was shown that he had an expectancy of about eighteen years. Under this state of facts and the other pertinent evidence shown in the record, we cannot say "that the jury was prompted by mistake, passion, prejudice or some other improper motive in arriving at such amount." Said assignment is overruled.

We have carefully examined all other assignments brought forward by appellant as well as the cross-assignments of appellee, and we think the same are without merit and they are respectfully overruled.

Therefore the judgment of the trial court is affirmed.